# CHARLESTON.

## LYNCH v. DAVIS.

Submitted January 16, 1917.   Decided January 23, 1917.

MINES AND MINERALS—*Mining Leases—Rights of Lessor.*

Where the several owners of adjoining tracts of land unite in a single lease thereof to a third party for oil and gas purposes, in which such lands are described as a single tract, and provision is made for the delivery of one-eighth of the oil produced to the lessors, all of the royalty oil so delivered must be divided among the lessors in the proportion that the area of the tract of land owned by each of them bears to the total area of the tract covered by the lease, regardless of the ownership of the tract or tracts of land upon which the well or wells may be drilled from which such oil is produced.

(LYNCH, PRESIDENT, absent).

Appeal from Circuit Court, Harrison County.

Suit by Effie Lynch and others against Lola M. Davis and others. Lola M. Davis answered the bill. From the decree for defendant, plaintiffs appeal.

*Reversed, decree entered for plaintiffs, and remanded.*

*Millard F. Snider, Charles W. Louchery* and *George M. Hoffheimer,* for appellants.

*Taney Harrison,* for appellee.

RITZ, JUDGE:

In the year 1898, by the death of their mother; Effie Lynch, Ida B. Davis, Anna L. Spindle, Ella Meek, Rufus H. Randolph and Lola M. Davis became the owners of fifty-four acres of land situate in the county of Harrison. Subsequently Rufus H. Randolph conveyed his one-sixth interest in this tract of land to his sister Effie Lynch. In the year 1895 the owners of the land decided to partition the same in kind among themselves, and to this end they secured the services of a surveyor who went upon the land and divided it into six equal parcels. The parties then assigned one of these parcels to each of the owners, except that to Effie Lynch there were assigned two of said parcels because of her said purchase of the interest of her brother. At the same time deeds were made between the parties conveying to them respectively the interests thus assigned, and these deeds were signed by all of the interested parties and acknowledged as to all of them, with the exception that the deed conveying the part thus assigned to Lola M. Davis was not acknowledged, or at any rate the notary public did not sign the certificate of acknowledgment. However, subsequent to this time the parties treated the several parcels of land as owned by them in severalty. They sold parcels from it. The share of each was charged on the land books to the proper owner and the taxes paid, and ever since this partition was made the several parcels have been treated as being owned by the parties in severalty. In the year 1913 the five sisters executed to their brother Rufus H. Randolph an oil and gas lease covering the whole of the property. The lease is by its terms the joint lease of all of the parties covering the whole tract of land, and describing it as a single parcel, and no indication is made in the lease of any holding of any part of it in severalty. The lease provides that the lessee shall have the

right to explore the tract of land for oil and to take the oil therefrom, should oil be discovered, and deliver to the lessors one-eighth of any oil produced from said leased premises. In all respects this lease treats the tract of land as if it were owned by the five sisters jointly, and had never been partitioned by them. This lease was transferred by the lessee therein named to others and a well which produced oil was drilled upon the parcel which had theretofore been assigned to Lola M. Davis. Upon the completion of this well the parties signed an order called a ''division order'' directing the pipe line company to deliver seven-eighths of the oil to the operator, and one-eighth of it to Effie Lynch and others, naming the other parties interested with Effie Lynch. At the same time they executed a power of attorney to a bank authorizing the bank to act for them in the sale of the one-eighth of the oil so to be delivered to them, and in the receipt thereof. At this time there was a question raised by Lola M. Davis as to the interest of the several parties in this oil, she then making the contention that she was entitled to receive all of the oil, in as much as the well from which it was produced was upon her land, and the other parties claiming that it should be divided among them in the proportion in which each of them was interested in the whole tract. It was at this time determined that the rights of the parties in this regard were fixed by the lease, and in this conclusion they were correct. On account of this dispute between the parties the bank to whom the power of attorney was executed refused to act under it, and this suit was then instituted in the Circuit Court of Harrison County for the purpose of partitioning the oil among the five interests above referred to. The defendant Lola M. Davis answered the bill and claimed that she was entitled to all of this oil, in as much as it was produced from a well drilled upon the land which had been assigned to her.

The first contention made by the plaintiffs who are seeking to have the oil divided among the interested parties, in accordance with the interest held by each in the whole tract of land, is that the attempt to partition the land in 1905 was ineffective in so far as the defendant Lola M. Davis was con-

cerned, because the deed from themselves attempting to convey the interest to her in severalty was not acknowledged before an officer authorized to take acknowledgments of deeds, or at any rate that the acknowledgment thereto was never signed by such officer. It is admitted that ever since said time the parties have held the tracts of land assigned to them in severalty. None of them have in any way interfered with the possession, control, use or ownership of the parcels assigned to the others. Under this state of facts there is no merit in the contention of the appellants that the partition was ineffective to vest the title to the tract assigned to the defendant Lola M. Davis in her in severalty. Possession of the premises assigned to them respectively was given to each of the parties. They exercised uninterrupted ownership and control over such premises from the time of such partition, and still continue to so treat the said land, and in view of this no deed or deeds were necessary to make this partition effective between the parties. *Frederick* v. *Frederick,* 31 W. Va. 566.

This brings us to a consideration of the only other question involved in this case, and that is, where several parties own several distinct parcels of land and join in a lease for gas and oil covering all of the several parcels so owned by them, and lease the same as one boundary, and make no provision for the payment of royalty to them separately, are each of such owners entitled to the oil produced from a well drilled on the tracts so owned by him, or do all of the parties participate in the royalty derived from the oil produced from a well, no matter upon which parcel of said land the same may be drilled? This seems to be a question of first impression in this state. We have cases which hold that where a lease like this is made the drilling of a well by the lessee upon any one of the tracts, and the production of oil therefrom, will vest in him the right to produce oil from all of the tracts so covered by such lease.

In the case of *Harness* v. *Eastern Oil Company,* 49 W. Va. 232, two tracts of land containing one hundred and fifty-two acres, and thirty-five and one-half acres, were owned by Harness and his wife respectively. They joined in a lease of

the two tracts describing them as one tract of land, containing one hundred and eighty-seven and one-half acres, more or less. A well was drilled on the tract of one hundred and fifty-two acres owned by Harness, and it was held that the drilling and production of oil from this well was sufficient to maintain the lease in force as to the thirty-five and one-half acre tract belonging to Mrs. Harness.

In the case of *South Penn Oil Co. v. Snodgrass*, 71 W. Va. 438, three persons owned respectively three contiguous tracts of three hundred and twenty-nine acres, one hundred and forty-three acres, and two hundred and seventeen and five-tenths acres. They executed a single lease covering all of them and described the premises as a single tract of six hundred acres, more or less. Later, two of the lessors conveyed parts of their land to two other persons. A well was drilled on one of the three tracts, but none on the other two. The owners of the two tracts upon which no wells were drilled attempted to lease to other parties, and upon a bill filed by the original lessee to cancel these subsequent leases it was held that the drilling of a well on one of the tracts of land was a sufficient compliance with the requirements of the lease to preserve the rights of the lessee as to all of said tracts, and that as to this requirement, to-wit, that oil would be produced within a certain number of years, the lease was a joint lease. From these cases, as well as from some others in which the question arose, it is settled that as between the lessors and the lessee in a case like the one at bar the lease will be treated as a joint contract, and not a contract requiring the lessee to perform its covenants with each of the lessors, or in relation to the estate of each of the lessors.

For the purpose of construing this lease we must assume that when the parties made it they did so with knowledge of the construction placed upon such contracts by this court in the cases above cited, and we must further assume that they knew of the vagrant character of oil in place. We are not aided here by any acts of the parties done under the lease, nor by any construction given the lease by the parties themselves, but must construe the paper upon its face.

If we give this lease the construction contended for by

the defendant Lola M. Davis, that is, that she is entitled to all of the oil produced from the well drilled upon her land, we say that the drilling of such a well is sufficient performance upon the part of the lessee to keep alive his rights under the lease as to the lands of all of the lessors, and that because of the vagrant character of this substance that the whole thereof may be extracted through a well, or wells, so located, and the lands of the other parties entirely devastated of the oil and gas underlying the same without any compensation to them whatever. It is contended that a more reasonable construction of this paper is that the parties, knowing the rights of the lessee under the lease, as laid down in the decisions above referred to, and being acquainted with the fugitive and vagrant character of oil and gas in place, for convenience leased their several tracts of land as one tract, contemplating that whatever oil was produced from the whole tract of land should be paid for to them jointly. In fact, this is the language of the lease. It provides for the payment to the lessors of the one-eighth of the oil produced from the land. It is not likely that these parties would have made this lease in the form that they did had they believed that one of them might receive all of the compensation to be derived from the production of oil. The several tracts of land were small, and it could easily be seen that the oil underlying the combined area could be produced more cheaply by treating it as one tract of land than it could if each of the tracts were leased separately. Under this lease the production of oil from a well on one of the tracts has vested in the lessee the right to extract the oil from all of the tracts, and we know that from its character the oil and gas in place under one of the tracts may be extracted from a well drilled on one of the other tracts; and should we hold that each of the parties are entitled to receive the royalty oil produced from a well, or wells, drilled on a tract owned by such party, then we in effect say that one of the parties to this contract may be permitted to appropriate the oil and gas of the others without any compensation being paid therefor. We do not think this is a fair construction of the contract. We are of opinion that the contract gave to the lessee the right to explore for

oil upon any or all of these tracts of land, and that by the production of oil upon one of said tracts there was vested in said lessee the right to remove the oil from all of said tracts, whether by means of a well, or wells, drilled upon one of them, or more than one of them, and that after the oil was so produced that the part thereof provided by the contract to be paid to the lessors should be divided among them in the proportion that the parcel of land held by each of them bears to the total area of the tract. This view is supported by the case of *Wettengel* v. *Gormley,* 160 Pa. St. 559. In that case the exact question presented here was presented to the Supreme Court of Pennsylvania, and that court held that the royalty produced should be divided among the parties interested in the proportion that the area of their several tracts bore to the total area involved in the lease. We think the reasoning of the court in that case is sound, and that its judgment was justified by the reasoning given.

In the case of *Higgins* v. *California Petroleum & Asphalt Co.,* 109 Cal. 304, there was a lease involved which provided for the mining of liquid asphalt. The lease covered two tracts of land, describing them as a single tract in the lease. The lessee subsequently became the owner of one of these tracts, and then contended that for the liquid asphalt produced from this tract of which it had become the owner it should not be compelled to account to the owner of the other tract. The court held in construing that lease that the rental to be paid for the asphalt produced from either of the tracts of land, must be divided between the parties in the proportion that the area of their respective tracts bore to the area of the whole tract covered by the lease.

It is contended by the appellee that to place this construction upon the contract involved in this case would in effect convey a part of the real estate of Lola M. Davis to her sisters, when there is in the lease no words which would effect such a conveyance. This argument is not well founded. The interpretation we give the contract, instead of having the effect declared, has the effect of preventing one of the parties from securing a part of the estate of the others without procuring a conveyance or paying compensation therefor. If

we give this lease the construction contended for by the appellee, because of the fugitive and vagrant character of oil in place, it would permit the lessee by operations upon the land of one of the parties to transfer the oil under the lands of the others, and divert it to the exclusive use of the one upon whose land a well was drilled. It is impossible, of course, to ascertain from what tract of land the oil actually produced came. We do know, however, that when a well is drilled upon one of these tracts of land the oil produced from it comes, not only from the tract upon which the well is produced, but from the other tracts as well. We know that when these wells are pumped for the oil the power of suction employed will not stop at the boundary lines. Because of the fact that these parties leased their lands jointly and as one tract, we are justified in the assumption that there is an equal amount of oil under each acre of land so leased. We are further justified in the assumption that the lessee will produce this oil and market it, whether from one well on one tract of land, or a number of wells on different parcels, and that when the royalty oil is divided among the interested parties in the manner above indicated each of the parties will receive what he is entitled to, and what the contract contemplated should be received by each of them.

It follows from what has been said that the decree of the Circuit Court of Harrison County must be reversed, and a decree entered here partitioning this oil among the parties interested in the proportions indicated in the pleadings, and the cause remanded to the Circuit Court of Harrison County for the purpose of executing such decree as to the funds now in the hands of its special receiver.

*Reversed, decree entered for plaintiffs, and remanded.*