# CHARLESTON.

PITTSBURGH & WEST VA. GAS CO. v. J. W. ANKROM *et als.*

Submitted September 18, 1918.   Decided November 15, 1918.

1. BANKRUPTCY—*Sale of Property—Oil and Gas Lease—Royalties—Persons.*

   Where a tract of land, subject to an oil and gas lease, is sub-divided in a proceeding in bankruptcy, and such sub-divisions sold separately by the trustee to different purchasers, the pur-chaser of each sub-division takes the same subject to such oil and gas lease; and should the lessee in such oil and gas lease thereafter produce oil or gas from such tract of land the royalties will be payable to the owner of the sub-division upon which the wells are drilled from which such production is had.  (p. 83).

2. INTERPLEADER—*Claims to Royalties—Determination.*

   Where in such a case a contention is made by the owners of sub-divisions other than the one upon which oil or gas is produced that they are entitled to participate in the royalties arising from such production, and the owner of the tract upon which such production is had claims the entire royalties, the lessee, being an innocent stakeholder in relation to such royalties, and not being advised as to the proper person, or persons, to receive the same, may upon a bill filed showing that he does not collude with any of the parties, have all of the interested parties inter-pleaded, and the adverse claims to such royalties determined.  (p. 82).

3. CASE DISTINGUISHED.

   *Lynch* v. *Davis,* 79 W. Va. 437, 92 S. E. 427, distinguished.  (p. 87).

Appeal from Circuit Court, Ritchie County.

Bill of interpleader by the Pittsburgh & West Virginia Gas Company against J. W. Ankrom, W. J. Collins, and oth-ers.  From the decree, J. W. Ankrom and others appeal.

*Affirmed.*

*M. K. Duty,* for appellants.

*Adams & Cooper,* for appellee Pittsburgh & West Virginia Gas Co.

*G. W. Farr* and *R. G. Altizer,* for appellee Collins.

RITZ, JUDGE:

Creed Collins, being the owner of two tracts of land con-taining 2172 acres and 135 acres respectively, leased the

same to J. F. Donaldson, his heirs, personal representatives and assigns, for the purpose of producing therefrom the oil and gas contained thereunder. There was reserved in the lease one-eighth of all the oil produced from the premises and a certain compensation to be paid for each gas well drilled thereon, and the lessee covenanted to complete a well within two months from the date of said lease, or to pay quarterly in advance the sum of $576.75 until the completion of a well. Before operations were begun under the lease Collins was adjudicated a bankrupt, and these tracts of land were divided into a number of small tracts by the Federal District Court, and sold to various purchasers by the trustee in bankruptcy. These sales were confirmed and the respective parcels conveyed to the purchasers thereof by the trustee. No mention is made in any of these deeds of the fact that the whole tract of land is subject to the oil and gas lease aforesaid. This lease was duly recorded in the office of the clerk of the county court prior to the sales which were made by the trustee in bankruptcy. Plaintiff is the assignee of J. F. Donaldson, and while a well was not completed on the premises within two months, as provided in the lease, the same was kept alive by the prompt payment of the delay rentals. The plaintiff finally completed a well upon one of the sub-divisions, being the one purchased by the defendant G. A. Riggs from the trustee in bankruptcy. Upon the completion of this well the defendant G. A. Riggs claimed the whole of the royalty. The owners of the other sub-divisions, with the exception of the defendant W. J. Collins, contested his right to have all of such royalties, and contended that inasmuch as the lease covered the whole tract of land, the royalties must be divided among the owners of the sub-divisions of said tract in the proportion that the areas of their respective tracts bear to the area of the whole tract. The parties were unable to reach a settlement among themselves, and the plaintiff, not being advised as to who is the proper party, or parties, to receive such royalties, brought this bill impleading the owners of all the respective sub-divisions, to the end that the controversy might be judicially determined.

Two reasons are assigned for a reversal of the decree of

the lower court. It is first insisted that the bill is not suffi-cient in its allegations for a bill of interpleader. The bill al-leges the facts as above stated. It further alleges that the plaintiff does not collude with any of the parties. It is true, the lease provides for the payment of the royalties direct to the lessor, or for their deposit in the First National Bank of Pennsboro to the credit of the lessor, and it is contended that the lessee, the plaintiff herein, should pay these royalties into the First National Bank of Pennsboro, and that the First National Bank of Pennsboro is the proper party to file a bill of interpleader for the purpose of determining to whom they should be paid. This contention is not tenable, inasmuch as, by the terms of the lease, before payment can be made to the First National Bank of Pennsboro, it must be ascertained to whose credit the money should be therein deposited, and that is the very purpose of this suit. The alle-gation of the bill is that the plaintiff has endeavored to get an adjustment of the respective claims of the parties with a view of determining to whose credit to deposit these funds, but has been unable to do so. We think the case presented is a typical one for the filing of a bill of interpleader.

It is next contended that the court below erred in holding, upon the facts above stated, that the owner of each sub-divi-sion is entitled to receive all of the royalties for oil or gas produced from his parcel of land, it being the contention that by executing the lease on this land Collins in effect segregated the mineral oil and gas, and that the effect of the purchase by these parties from the trustee in bankruptcy was to purchase a particular parcel of the land, but as to the oil and gas their purchase amounted to an undivided interest therein, and that such royalties must be divided among the owners of the respective sub-divisions in the proportion that the area of each sub-division bears to the area of the whole tract. It is argued that the effect of the decision of the lower court would be to permit the development of one of these subdi-visions, and the extraction therefrom, not only of the oil un-derlying such sub-division, but of the oil underlying adjacent sub-divisions, without making any compensation therefor, and that the owners of such adjacent sub-divisions would be

powerless to protect themselves because, under the decisions
of this court in the cases of *Harness* v. *Eastern Oil Co.,* 49
W. Va. 232, 38 S. E. 662, and *South Penn Oil Co.* v. *Snod-
grass,* 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848,
the lessee would have the right to develop the whole of the
tract of land and keep the lease alive as to the whole thereof
by drilling a well on any one of the sub-divisions. On the
other hand, it is insisted that when the defendants purchased
from the trustee in bankruptcy, no reference being made to
the lease then existing on the tract of land, they acquired
every interest that the bankrupt had, and this must be con-
ceded to be true. What then was the interest purchased by
each of these defendants? The oil and gas lease, it must be
borne in mind, did not pass title to anything to the lessee.
It simply conferred the privilege of going upon the land and
exploring for oil and gas, and removing the same if discov-
ered. Then, at the time of the sale of these respective tracts
of land by the trustee, each of the purchasers acquired every-
thing that Collins had theretofore owned in the respective
tracts so purchased, including all oil and gas. Oil and gas
are minerals, and so long as they are in place they belong to
the owner of the land under which they lie, and the right
also belongs to that owner of the land to explore for them
and extract them therefrom. If they escape from his prem-
ises to the premises of another before he has captured them,
they no longer are his property; and vice versa, if by explor-
ation upon his premises oil escapes thereto from the premises
of an adjoining owner it thereby becomes his property.
From this it necessarily follows that when these defendants
purchased their respective parcels of land from the trustee
in bankruptcy they bought all of the estate therein, subject
only to the right of the plaintiff herein to explore for and
produce the oil and gas. This right which is conferred upon
the lessee is exactly the same that would have existed in
these purchasers had there been no lease, from which it
necessarily follows that the owner of each sub-division is en-
titled to the royalties on all of the oil produced from wells
drilled on his sub-division. It is true, this may result in
hardship for the reasons above stated, but these are matters

which could have been overcome by the purchasers at the time of the sale by the trustee in bankruptcy. To hold that the royalties must be divided among the several owners, as is contended for by the appellant, might also result in serious hardship. It would, no doubt, result in some of the defendants receiving part of the royalties for oil which was extracted from lands at a distance of more than a mile from the lands owned by them, and which could by no stretch of imagination be taken to have been produced from their lands.

Our view is supported by the case of *The Northwestern Ohio Natural Gas Co.* v. *Ullery*, 68 O. St. 259. In that case the owner of two adjoining tracts of land containing respectively forty and sixty acres leased them for oil and gas purposes. He subsequently conveyed the forty-acre tract to the defendant Ullery, and the sixty-acre tract to a man by the name of Shoop. A well was drilled upon the forty-acre tract which produced gas. Ullery, the owner of this forty-acre tract, claimed the compensation provided to be paid for a gas well, and Shoop, the owner of the sixty-acre tract, also claimed an interest in this royalty. An action was brought by Ullery to recover from the gas company the rentals provided to be paid. It will be seen from this statement that that case was exactly in point with the case we have here. The very learned and philosophical Chief Justice Burket delivered the opinion of the court in that case, which opinion fully supports our conclusion in this case. In the case of *Osborn* v. *Arkansas Territorial Oil & Gas Co.,* (Ark.) 146 S. W. 122, an exactly analogus case was presented to the Supreme Court of Arkansas for decision. T. N. Sloat, being the owner of a tract of eighty acres of land, executed an oil and gas lease thereon. After the execution of said lease and before the production of oil and gas he conveyed forty acres off said tract to another, and subsequently conveyed to the trustees of a church a tract of one-half acre from the remaining forty acres. The lessee, acting under the original lease executed by Sloat, drilled a well upon the half-acre tract conveyed to the church trustees, and upon the question being submitted to the Arkansas Supreme Court as to whether all of these royalties should be paid to the church

trustees, or whether they should be divided between the owners of the eighty acres of land in the proportion in which they were interested therein, it was held that the church trustees were entitled to the whole thereof. In this connection, the following quotation from the opinion of the court in that case is instructive:—"We are of the opinion that the fact that the lease was executed before the conveyance to the trustees of the church did not alter or lessen their right of ownership of the gas, which was a part of the realty granted to them. As was said in the case of *Natural Gas Co.* v. *Ullery, supra:* 'The fact that oil and gas are vagrant and transitory in their nature does not prevent their adhering to and becoming a part of the land while passing from one tract to another, and while so in one tract they are a part of that tract and belong to the owner thereof until they escape from such tract, and, if brought to the surface before such escape, they become personal property belonging to the owner of the land. It therefore irresistibly follows that the oil or gas taken from the well on a particular tract of land belongs to the owner of that tract, even though the contract under which the well was drilled included other tracts of land. Because the contract of production may have included two or more tracts of land, such contract cannot have the force of taking from the owner of one tract the oil or gas adhering to such tract for the time being and bestowing it upon the owner of another tract, where it may never have been.' " In the case of *Fairbanks* v. *Warrum,* 56 Ind. App. 337, 104 N. E. 583, an exactly similar question was before that court. Noble Warrum was the owner of two tracts of land containing fifteen acres and three hundred and fifty-three acres respectively, and he executed an oil and gas lease covering both of them. Subsequently he sold and conveyed the fiften-acre tract and fifty-eight acres off the other tract. A well was drilled under the lease upon the 353-acre tract, but not upon that part thereof included in the 58 acres conveyed away. The grantees in the deed from Noble Warrum conveying the 15 acres and the 58 acres above referred to, contended that they were entitled to receive part of the royalties from this well. This contention was not sustained

by the court, but on the contrary it was held that the royal-
ties belonged to the party upon whose land the well was:
drilled. The reasoning of the courts in these cases commends
itself to our judgment, and we believe entirely justifies the
conclusion which we have reached in this case. It is true
that the Supreme Court of Pennsylvania in the case of *Wet-
tengel* v. *Gormley,* 160 Pa. St. 559, which was again reviewed
in 184 Pa. St., 354, comes to an exactly opposite conclusion
from that reached by us upon an entirely analogous state of
facts. We have carefully considered those opinions and they
fail to convince us of the correctness of that court's conclu-
sion. We are satisfied that the purchasers at the sale made
by the trustee in bankruptcy took every estate there was in
the parcel of land purchased by them respectively, including
the oil and gas underlying the same, or which might be cap--
tured by development upon the tract of land so purchased,.
whether such development was made under the lease now held
by the plaintiff or otherwise.

I am not unmindful of the fact that the above views are
inconsistent with some expressions contained in the opin·
ion in the case of *Lynch* v. *Davis,* 79 W. Va. 437, 92 S. E.
427. Upon a consideration of that opinion I find that there
are expressions contained in it which were not at all neces-
sary for the decision of that case. The controlling fact in
that case was that the separate owners of the several ad-
joining tracts of land combined them themselves for the pur-
pose of oil and gas production. The tracts of land were
small; they lay contiguous to each other; and it may be
well assumed that the oil and gas could be produced there-
from more economically if the whole acreage was treated as
one tract than if each tract was leased separately. In fact,
it could not well be held otherwise than that the purpose of
those parties was to treat their oil and gas as held by them
in common. They combined their holdings under a single
description, and so far as the lease goes there is but one tract
of land to be dealt with. The case of *Higgins* v. *California
Petroleum and Asphalt Company,* 109 Cal. 304, is very
similar in its facts to the case of *Lynch* v. *Davis.* In that
case the owners of two adjoining tracts of land, for the pur-

pose of having the mineral asphalt mined therefrom, combined them and leased them as a single tract, and the court held that by thus doing they in effect made themselves tenants in common in such mineral. That is the effect of the holding in *Lynch* v. *Davis,* and the only effect which should be given to the opinion in that case. Confining the language used in the opinion in that case within these limitations, it is not inconsistent with the opinion we entertain in the present case, and correctly solves the questions there involved. Any expressions of opinion in the case of *Lynch* v. *Davis* in conflict with the views expressed in this opinion are disapproved.

The case of *Campbell* v. *Lynch,* 81 W. Va. 374, 94 S. E. 739, seems to be at variance with the conclusion here reached. In that case I filed a dissenting opinion expressing the views I then entertained regarding the questions there involved, in which Judge MILLER joined. We still adhere to the views expressed in that dissent, and think the case of *Campbell* v. *Lynch* should be overruled, but Judge LYNCH, who concurs with us in this opinion, is of the opinion that the facts in that case distinguish it from this case, and does not think that the views here expressed result in overruling that decision.

We find no error in the decree of the circuit court, and the same is affirmed.

*Affirmed.*

POFFENBARGER, PRESIDENT, and WILLIAMS, JUDGE, *dissenting):*

For reasons stated in *Campbell* v. *Lynch,* 81 W. Va. 374, 94 S. E. 739, we dissent.