**KIMBLEY et al. v. LUCKEY et al.**

No. 9002—Opinion Filed April 8, 1919.

(179 Pac. 928.)

(Syllabus.)

**1. Oil and Gas—Warranty Deed—Interest Granted.**

A conveyance of land by warranty deed, without reservation therein, passes to the grantee, his heirs or assigns, "the whole interest of the grantor in the premises described," including the right to the oil and natural gas that may be found underneath the premises granted, or by drilling thereon.

**2. Same—Conveyance of Leased Premises—Rights.**

Where an oil and gas lease is made to extend to the heirs, administrators, and assigns of both lessor and lessee, and before the discovery and production of oil or gas thereon a third party purchases a portion of the leased premises, each owner is ordinarily entitled to the profits and royalties arising and accruing from the oil and gas produced on his tract, free of any claim or demand of the other.

**3. Same—Sale of Land Subject to Lease—Apportionment of Royalties.**

Where a tract of land subject to an oil and gas lease is subdivided by the owner and lessor by selling a portion thereof, the purchaser of such portion takes the same subject to such lease; and, should the lessee therein thereafter discover and produce oil or gas from the residue of the leased premises, such purchaser is not entitled to an apportionment or share of the royalties accruing from the oil and gas produced thereon.

Error from District Court, Okmulgee County; Chas. G. Watts, Judge.

Action by E. W. Kimbley, Frank King, Frank Sheedy, and W. R. Alexander against Floyd Luckey and Louis Luckey. From the judgment sustaining a demurrer to plaintiffs' petition and dismissing their action, plaintiffs bring error. Affirmed.

G. R. Horner, for plaintiffs in error.

John Caruthers, for defendants in error.

William G. Davisson, J. H. Hill, John R. Ramsey, Y. P. Broome, H. H. Hagan, Amos L. Beaty, Robert A. John, N. A. Gibson, J. L. Hull, T. L. Gibson, Pat Malloy, E. H. Chandler, James A. Veasey, Ralph E. Campbell, F. L. McCain, E. Nat. Ligon, Chas. R. Bostick, W. C. Franklin, Rush Greenslade, John M. Chick, J. W. Woodford, L. O. Owen, and Ames, Chambers, Lowe & Richardson, amici curiae.

SHARP, J. Plaintiffs' action was to recover the value of royalties on oil and gas produced on the west half of the northeast quarter and the southeast quarter of the northeast quarter of section 18, township 13 north, range 13 east, by the lessee, E. C. Lambert, and by him paid to the owners, Floyd and Louis Luckey, between the 19th day of January, 1916, and the 8th day of December, 1916.

The circumstances out of which the controversy arose are as follows: On the 24th day of August, 1915, Floyd Luckey, at the time the owner of the northeast quarter of section 18, township 13 north, range 13 east, Okmulgee county, executed thereon and delivered to E. C. Lambert an oil and gas mining lease for a term of five years, which lease provided for the payment of certain rentals for delayed drilling, and for $200 per year for each producing gas well, and one-eighth of the gross proceeds of all oil and gas produced and saved from the premises. On the 30th day of August following Floyd Luckey, by warranty deed, conveyed his title in the aforementioned lands to Louis Luckey. On the following day Louis Luckey, joined by Floyd Luckey, entered in a new oil and gas lease to E. C. Lambert on the 160-acre tract. The covenants of the lease do not differ materially from those of the lease of August 24th. On the 19th day of January, 1916, and before the development of the leased premises for oil and gas, the Luckeys, for a consideration of $4,000, conveyed their title to the northeast 40 acres of the 160-acre tract to W. R. Alexander and Frank Sheedy. While the deed named the latter-named parties as grantees, it was understood that they took only an undivided one-half interest therein, the title in and to the remaining interest being held by them in trust for E. W. Kimbley and Frank King, and which trust was discharged on the 10th day of October following by Alexander and Sheedy executing to Kimbley and King their warranty deed, conveying to them the legal title to an undivided one-half interest in said 40-acre tract. It is

not claimed that Lambert produced any oil or gas on the 40 acres acquired by Alexander and his cotenants. It is admitted that during the period for which a recovery is sought oil in considerable quantities was produced on the residue of 120 acres of land owned by the Luckeys and included in the land covered by the Lambert lease.

While the allegations of the petition are somewhat meager in respect to the locality of the production, in view of the position here taken by counsel, and the wide importance of the question in controversy, we will treat the case as sufficiently presenting the contention urged, that the purchasers of a portion of the reversion are entitled to an apportionment of all oil and gas royalties produced from the entire 160-acre tract. In support of their right to recover, counsel rely upon Wettengel v. Gormley, 160 Pa. 559, 28 Atl. 934, 40 Am. St. Rep. 733; Wettengel v. Gormley, 184 Pa. 354, 39 Atl. 57; 19 Mor. Min. Rep. 213; Lynch v. Davis, 79 W. Va. 437, 92 S. E. 427, L. R. A. 1917F 566; Campbell v. Lynch, 81 W. Va. 374. 94 S. E. 739, L. R. A. 1918B, 1070; and Higgins v. California Pet. & Asphalt Co., 109 Cal. 304, 41 Pac. 1087. A brief review of these cases will, we think, establish either that the cases were decided upon a state of facts not here involved, or in the application of an erroneous principle of law. The Pennsylvania cases were between devisees; hence the question as between the lessee and the purchaser from the lessor was not involved. The first opinion appears to turn largely upon the belief entertained by the court that on account of the vagrant character of oil and gas a different rule should be applied than that recognized in case of solid minerals, and that, as oil from one tract might readily be drawn from a well drilled on an adjoining tract, it would be inequitable to hold that the owner of the tract on which the well was located would be entitled to the entire royalty. The case assumes that the entire tract. divided in severalty by the testator's will to the devisees, was underlaid with oil. In the second Wettengel Case (which arose under the same devise) the court held that the lease created such a severance of the mineral rights from the fee that after its execution not only did the lessee have an estate in the land separate from the fee, but the fee owner himself was thereafter vested with an estate independent of the fee, an estate in the prospective royalties, and that the latter estate was so separated from the fee that it did not merge in the devise thereof, and that, since no mention of it was made in the will, it descended as intestate property, and there-

fore went equally to the three sons. In part the court said:

"But, as we have seen, the royalties were personal. They were not disposed of by Gormley's will. They were not even referred to in it. The intestate laws must in such case be looked to for the disposition of this very considerable part of his estate. The children hold together all the acreage that is covered by the lease, and each should receive such share of the royalties as his or her share of the land bears to the whole tract covered by the lease."

Furthermore, it was said that after the expiration of the lease the severance of the freehold and its minerals would be complete. In Lynch v. Davis, 79 W. Va. 427, 92 S. E. 427, L. R A. 1917F, 566, a small tract of 54 acres of land was partitioned in kind among six heirs, one of whom subsequently sold his one-sixth interest to his sister. The heirs then entered into a joint lease for the purpose of developing their separate premises for oil and gas. They combined their holdings under a single description, and, according to the lease, there was but one tract of land. The case in this respect is very much like that of Higgins v. California Pet. & Asph. Co. In both cases leases were executed jointly by the owners of several separate, but contiguous, small tracts. The opinion in the West Virginia case turned on the fact that the parties had leased their lands jointly and as one tract, and upon the assumption, indulged by the court, that there was an equal amount of oil under each acre of the leased premises, and that it was the intention of the parties by their joint lease or contract to share equally in the profits accruing from production, irrespective of where or on whose land oil was discovered and produced. In the California case it was said that both by the terms of the lease and the practical construction given it by the parties, each was to share equally in the proceeds without regard to the tract upon which the asphalt was produced. In Campbell v. Lynch, the leases were made by Lewis during his lifetime. After his death two tracts of land subject to the leases were partitioned by judicial proceedings among the widow and heirs at law. It was held that partition proceedings among copartners of the tract of land on which there was a subsisting oil and gas lease executed by their ancestor during his lifetime, and assignment of dower therein to the widow, before any wells had been drilled on the land, by a decree in which neither the lease nor the royalties and rents provided by it were mentioned, founded upon pleadings silent as to the lease

and rights created by it, did not extend to nor include such royalties and rentals, and the owner of each lot assigned therein was entitled to a proportionate share of all the royalties and rentals accruing from all the wells drilled on the entire tract of land embraced in the lease, subject to the widow's right of dower therein. The opinion is by a divided court, Justices Ritz and Miller dissenting. Within one year thereafter, in Pittsburgh & W. Va. Gas Co. v. Ankrom (W. Va.) 97 S. E. 593, the case of Lynch v. Davis was expressly disapproved, and Campbell v. Lynch, to all intents and purposes, overruled, and the rule contended for in the dissenting opinion of Justice Ritz, and announced in Ohio, Arkansas, and Indiana, was enunciated as the law. In the Ankrom Case a tract of land, subject to an oil and gas lease, was subdivided in a proceeding in bankruptcy, and the subdivision sold separately by the trustee to different purchasers. And it was held that the purchaser of each subdivision took the same subject to the outstanding oil and gas lease, and that, should the lessee in such oil and gas lease thereafter produce oil or gas from such tract of land, the royalty would be payable to the owner of the subdivision on which the wells were drilled, and from which production was had. The opinion is in harmony with, and cites in its support, Northwestern Ohio Natural Gas Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494, Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S. W. 122, and Fairbanks v. Warrum, 56 Ind. App. 337, 104 N. E. 983, 1141. The recent opinion of the West Virginia court leaves the rule contended for by plaintiffs in error supported only by the opinions of the Pennsylvania court, as the California case, involving a joint release by the separate owners, presents a situation materially different, and cannot for that reason, be considered as authority.

When Alexander and his cotenants took title from the Luckeys to the 40-acre tract, they acquired every interest that the grantors had therein at the time, including the oil and gas underneath the ground, subject only to Lambert's right to enter upon the land and explore it for oil and gas and remove the same if found. This much seems clear from a consideration of section 1162, Revised Laws, providing that a warranty deed made in substantial compliance with article 13 of the statutes "shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described. * * *" Whatever there was underneath the surface of the earth, whether oil or gas or other valuable or precious minerals, passed to the purchaser by the deed of January 19, 1916. When executed and delivered by the Luckeys, their interest therein was completely extinguished. But the making of the deed in no wise affected Lambert's rights under his lease, as the deed itself in the covenants of warranty especially excepted the oil and gas lease. Lambert could, as formerly, keep the leases in force for a time either by the payment of periodical rentals, or by development work. Oil and gas are minerals, and, so long as they remain in place in mother earth, belong to the owner of the land under which they are found, and, of course, in the absence of a contract with another, such owner has the right to explore for oil and gas on his lands, and, when found, to remove the same. If, because of their transitory nature, they escape from his premises to the premises of another before being reduced to possession, they are no longer his property. When the Luckeys' grantees acquired the 40-acre tract purchased by them, it was subject only to the rights of the lessee to explore for, and, if found, to produce and remove therefrom, the oil and gas. As stated by the Ohio court in Northwestern Ohio Natural Gas Co. v. Ullery, supra:

"The fact that oil and gas are vagrant and transitory in their nature does not prevent them from adhering to and becoming part of the land while passing from one tract to another, and while so in one tract they are a part of that tract and belong to the owner thereof until they escape from said tract, and, if brought to the surface before such escape, they become personal property belonging to the owner of the land."

While the leases do not expressly state that the land may be subdivided, a subdivision may be fairly implied because of the provisions extending the conditions and agreements to the heirs, executors, administrators, successors, and assigns of both parties. The plaintiffs in error are the "assigns" of the 40-acre tract purchased by them. The argument sometimes urged that, the lease being indivisible, the lessee will not be subjected to the inconvenience of dealing with separate owners, is, in such case, neither convincing nor sound. The rights of the owners are rested upon a more stable foundation than the mere convenience of a lessee, and particularly where the claim is made, not by the lessee, but by one who is seeking to profit by it. The common-law rule of the apportionment of rents in agricultural leases, where the lessor sells a portion of the leased premises to a stranger, and, as here, apportionment is not provided

for by contract, has no place in the case under consideration, if, indeed, it has in our jurisprudence in respect to oil and gas leases. We know, as a matter of common knowledge, that it has been the general, if not universal, custom in this state, from the first discovery of oil and gas, for the royalty to be paid the owner of the lands on which the wells were located, and from which production was had. To apply the common-law rule of apportionment of rents to such class of cases would be destructive of titles, at least of such titles as had been acquired by purchase, and would work interminable confusion and bring about an almost endless amount of litigation, and that in cases where the parties had, from the earliest days of the business, in good faith made land ownership the basis of title to production.

The oil and gas under the 160 acres of land belonged to the Luckeys, subject only to the license or lease, so called, held by Lambert, to explore for oil and gas and produce the same when discovered. When there was carved out of this tract and conveyed to Alexander and his cotenants a portion of the lands, they pro tanto succeeded to the interest of the Luckeys, not only in the fee, but in the oil and gas produced on the 40-acre tract. But they acquired no additional or greater interest by their purchase. The deed did not include or influence the residue of the tract, and consequently did not affect the qualified ownership in and to the oil and gas under the remainder of the tract. Such qualified ownership remained in the Luckeys. Had neither of them theretofore executed the Lambert lease, they would have had a right to drill on the residue of the tract for oil and gas, and to possess themselves of such oil and gas as was produced therefrom. This is the rule announced in Northwestern Ohio Natural Gas Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494, Osborn v. Arkansas Territorial Oil & Gas Co., 103 Ark. 175, 146 S. W. 122, and Fairbanks v. Warrum, 56 Ind. App. 337, 104 N. E. 983, 1141, and contended for in the dissenting opinion in Campbell v. Lynch, 81 W. Va. 374, 94 S. E. 739, L. R. A. 1918D, 1070. In so far as the record discloses, we may as fairly assume that the tract acquired by Alexander and others was barren of oil and gas as to conclude otherwise. We are not informed on what portion of the 120-acre tract oil or gas was produced, and we cannot fairly assume, as the Pennsylvania court appears to have done, that the entire tract was underlaid with such minerals. It may or may not have been. Certainly we cannot assume that the entire quarter section of land contained oil and gas in paying quantities from the mere fact that the title thereto was originally in one person, and that the oil and gas mining leases covered the whole tract. If, in drilling the residue of the land, the lessee, on account of the location of the wells, caused the lands of Alexander and his cotenants to be drained of the oil and gas underlying their lands, that fact should have been charged and made to appear in some form. If such were the case, we do not mean to be understood, by any expression herein contained, as indicating that the purchasers of a portion of the leased premises would be without a remedy. It is sufficient to say that plaintiffs in error have made no such case.

The judgment of the trial court is affirmed.

HARDY, C. J., and OWEN, PITCHFORD, and McNEILL, JJ., concur.