J. S. Pridemore, *et al.*

*v.*

Harry Lucas, *et al.*

(No. 9792)

Submitted September 24, 1946. Decided December 17, 1946.

Okey P. Keadle, for appellants.

Lilly & Lilly and R. G. Lilly, for appellees.

RILEY, JUDGE:

J. S. Pridemore and others brought this suit of interpleader in the Circuit Court of Cabell County against Harry Lucas, Ada Sturm, Verlin Lucas, C. B. Harbour, and Essie Harbour, to ascertain the ownership of a fund in plaintiffs' hands, one-half of which is claimed by the defendants, Harry Lucas, and Ada Sturm, and the whole thereof by the defendants, C. B. Harbour and Essie Harbour. From a decree of the circuit court providing that, after payment of costs and a fee of three hundred dollars to their attorney, McDaniel Purcell, the plaintiffs pay the balance of said fund, including all royalties from the well described in the bill of complaint and those which may hereafter accrue therefrom, to C. B. Harbour and Essie Harbour, the defendants, Harry Lucas and Ada Sturm, prosecute this appeal.

Judith Lucas, the mother of Harry Lucas, Ada Sturm, Verlin Lucas and Essie Harbour, was the owner of forty acres of land, situate at Salt Rock, in McComas District, Cabell County. By deed dated November 3, 1920, in which her husband, Irvin Lucas, joined, she conveyed two-fifths of an acre from said forty-acre tract to her daughter, Essie Harbour; and by deed dated April 10, 1924, her husband, Irvin Lucas, joining therein, she conveyed to

Essie Harbour and her husband, C. B. Harbour, three-twentieths of an acre, more or less, from said forty-acre tract. These two tracts are contiguous and together they constitute what is designated in the record as the "Harbour house lot". On the death of Judith Lucas, intestate, the remainder of the forty-acre tract descended in equal shares 'to her said children, Harry Lucas, Ada Sturm, Verlin Lucas, and Essie Harbour, subject to the dower rights of her husband, Irvin Lucas, now deceased. No partition of the forty-acre tract, less the Harbour house lot, has been made.

By a written agreement dated August 23, 1935, Irvin Lucas, widower of Judith Lucas, and the four surviving children of Judith and Irvin Lucas, together with their spouses, including C. B. Harbour, leased to R. H. Adkins and J. S. Pridemore for oil and gas purposes, "All that certain tract of land situate in McComas District, Cabell County," described in the lease by reference to adjoining property owners and "Containing Forty (40) acres, more or less", which lease by subsequent assignments is now owned by the plaintiff, J. S. Pridemore. The lease provides that royalties thereunder are payable to "Lessor, their heirs or assigns", by cash or check "to them as their interests may appear * * * or by check made payable to them order". Immediately after the execution of this lease, plaintiffs drilled a well on a part of the leased premises, not included in the Harbour house lot, which produced and continues to produce gas in paying quantities, and thereafter drilled and operated two other wells, it being plaintiffs' contention that the three wells are sufficient to a prudent and economical development of the entire forty-acre tract of land.

Under date of October 17, 1935, the Harbours leased, for oil and gas purposes, the Harbour house lot to W. C. Kingery, who, together with his associates, and notwithstanding notices directing attention to the Pridemore lease, entered upon the Harbour house lot and drilled successfully for oil and gas. The royalties resulting under the Harbour-Kingery lease are in dispute in this suit.

In 1936 J. S. Pridemore and his associates brought a suit in the Circuit Court of Cabell County against Kingery, his associates and the Harbours, as lessees and lessors in the agreement of October 17, 1935, in which Irvin Lucas, Ada Sturm, Harry Lucas, Verlin Lucas and the Clayco Gas Company, the purchaser of the gas produced from the Harbour house lot, were also made parties defendant. In this suit the plaintiffs asserted that the lease of August 23, 1935, embraced the whole of the forty-acre tract of land and was superior to the Harbour-Kingery lease, and asked that the latter be cancelled as a cloud on title; that Kingery and his associates be enjoined from taking gas from the well on the Harbour house lot and that he account to plaintiffs for the gas produced and sold from the well on said lot. In this suit Essie Harbour and C. B. Harbour filed a joint answer, in which they asserted that the Harbour house lot was not included in the Pridemore lease, and, if it was included, such inclusion was the result of a mistake and misrepresentation, and said defendants by way of affirmative relief prayed that the Pridemore lease of August 23, 1935, be reformed accordingly.

Though Harry Lucas, Ada Sturm, Irvin Lucas and Verlin Lucas, were made parties defendant to this former suit, the bill of complaint therein shows that they were not parties to the lease sought therein to be cancelled, and that no relief was prayed for against them. They filed no answer and made no claim in said suit.

On January 3, 1938, the circuit court entered a decree in the former suit, which found that the Harbour house lot was a part of the forty-acre tract, leased to plaintiffs under the agreement of August 23, 1935, and decreed that the Harbour-Kingery agreement of October 17, 1935, be cancelled as a cloud on plaintiffs' title, and that the well on the Harbour house lot be decreed to plaintiffs, and judgment awarded the latter for the gas taken by Kingery and his associates under their purported lease. An application to this Court for an appeal from this decree was refused. On March 27, 1936, Irvin Lucas, Verlin Lucas, Essie Harbour, Ada Sturm, and Harry Lucas entered into

a mutual agreement, in which they recited that they were the lessors in the Pridemore lease of August 23, 1935— erroneously referred to in the agreement as March 27, 1936,—covering a tract of forty acres, more or less of land, situate at Salt Rock, Cabell County, West Virginia, on which two gas wells have been drilled, and by said agreement the parties "agree that the royalty to be paid under the terms of said lease" shall be one-fifth thereof to each of the agreeing parties, and, further, "At the death of Irvin Lucas his 1/5 to be divided among the four (4) heirs."

At the time the present suit was brought, evidently Irvin Lucas was dead, and the appellants' brief asserts, without contradiction, that Verlin Lucas, who filed no answer in the instant suit, has assigned any interest he may have had to the royalties in question to C. B. Harbour and Essie Harbour, the appellees on this appeal.

Initially, it may be well to discuss what, in our opinion, was the effect of the decree of the Circuit Court of Cabell County on January 3, 1938, in the former suit. It is important to note that that suit was not an interpleader suit: it was brought solely for the purpose, as shown by the bill of complaint therein, of enjoining Kingery and his associates from producing gas from the Harbour house lot; enjoining the Clayco Gas Company from purchasing the gas therefrom; and for the further purpose of cancelling the Harbour-Kingery lease, and retrieving the moneys derived from the production thereunder. From a careful reading of the pleadings in that suit, we are satisfied that the sole issue before the circuit court then was whether the Harbour house lot was embraced in the Pridemore lease of the forty-acre tract of land. That lot clearly was carved out of the forty-acre tract, and was embraced in the prior Pridemore lease. The agreement of March 27, 1936, between the widower and heirs of Judith Lucas, shows that the parties regarded the Pridemore lease as being all-embracing, but, be that as it may, the issue before the circuit court in the former suit was clear-cut, and the court by its final decree decided once and for all that Kingery and his associates obtained no rights under their

purported lease to the Harbour house lot; and that the lease thereon, the production therefrom and the gas purchased by Clayco Gas Company were the property of Pridemore and his associates. To that extent the decree of January 3, 1938, in the former suit is *res judicata*. *Walker* v. *West Virginia Gas Corporation*, 121 W. Va. 251, 3 S. E. 2d 55; *Rigg* v. *Canterbury*, 116 W. Va. 303, 180 S. E. 182; *Barbour, Stedman & Herod* v. To*mpkins*, 58 W. Va. 572, pt. 1, syl., 52 S. E. 707. The issue in the former suit being directly between Pridemore and his associates, who were therein asserting an affirmative claim, and the Harbours, having been decided against the latter, they are precluded in the present suit from reasserting their claim under the Harbour-Kingery lease.

But the appellees assert that notwithstanding the fact that the instant suit involves only the right to royalties, the appellants are precluded by the former decree for the reason, though the question involved in the present suit was not put in issue in that suit, that under the authority of *Walker* v. *West Virginia Gas Corp., supra,* it is not essential that the matter should have been affirmatively put in issue in the former suit, it being sufficient if the former suit was of such nature that the parties might have disposed of the matter in that suit on its merits. With this position we cannot agree. The *Walker* case involved a claim to a proportionate share of royalties under an oil and gas lease, and this Court held that in a former suit the claim to royalties having been asserted and adjudicated, and all interested parties having been made parties to said suit and served with process, the decree in the former suit "is *res adjudicata* as to the rights of the parties under the lease in question, though at variance with decisions of the court of last resort of the jurisdiction." Point 2, syllabus.

In the instant case, plaintiffs are not asserting any affirmative claim: they are simply the stakeholders of a fund involved in a suit of interpleader. The contending parties are interpleaded defendants, and the conflicting claims between them, which arise directly upon the plead-

ings in this suit, were not involved in the former suit. In the former suit, as hereinbefore suggested, the claim was that of Pridemore and his associates to the well on the Harbour house lot, the production therefrom, and the moneys derived under the Harbour-Kingery lease. The claim to royalties in the hands of Pridemore and his associates was not involved in that suit. The rule that the doctrine of *res judicata* should be applied so that a former adjudication is a bar to the subsequent litigation of a cause of action and precludes a second adjudication of the questions in issue and adjudicated in the former trial, has limited application. Where a second suit or action is based upon a different claim, demand or cause than was involved in a former suit or action, the former decree or judgment operates as a bar only as to the questions actually litigated and determined in the prior litigation. In *Central Banking & Security Co.* v. *United States Fidelity & Guaranty Co.,* 73 W. Va. 197, 80 S. E. 121, it was held that where the cause of action in a subsequent suit is separate and distinct from that in a former suit, it is not merged in the decision in the latter suit. "In such case", this Court held in point 5 of the syllabus, "the decree in the first suit does not bar the second, unless the question of liability involved in the second was actually put in issue by proper pleadings and decided in the first." For a well-considered discussion of the immediate question, see the opinion of Judge Poffenbarger in the *Central Banking & Security Co.* case at pages 203 to 206, inclusive.

Thus in *Perdue* v. *Ward,* 88 W. Va. 371, 106 S. E. 874, this Court held that a final decree in an injunction suit, instituted solely for the purpose of inhibiting defendants from obstructing plaintiffs' right of way over defendants' land, which decree afforded that relief, in which suit the question of damages for the obstruction was not raised, did not preclude the plaintiffs in a former suit from bringing an action at law against the same defendants to recover damages caused by the obstruction of plaintiffs' right of way. The rule, as stated in point 1, syllabus, *Alderson* v. *Horse Creek Coal Land Co.,* 81 W. Va. 411, 94

S. E. 716, is that: "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive not only as to the matters actually determined, but as to every other matter *which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action.*" (Italics supplied.) The limitation on the general rule governing the law of adjudication is well stated by Mr. Justice Field in *Cromwell* v. *Sac County,* 94 U. S. 351, 24 L. ed. 195. Also see generally 30 Am. Jur., Subject, Judgments, Section 180 and cases cited under Note 8; A. L. R. note to *Harding Co.* v. *Harding,* 352 Ill. 417, 186 N. E. 152, 88 A. L. R. 563, 574-577, inclusive; and 2 Freeman on Judgments, Fifth Ed., Sections 676, 677. So because the former suit and the suit at bar do not embrace the same claim, demand or cause, and the matters at stake in the suit at bar were neither at issue, nor, by reason of the nature of the case in the former suit, could not have been made an issue therein, the appellants are not precluded by the doctrine of *res judicata.*

Having arrived at the foregoing conclusion, this case, in our opinion, is necessarily controlled by the case of *Lynch* v. *Davis,* 79 W. Va. 437, 92 S. E. 427, in which this Court held that where the several owners of adjoining tracts of land unite in a single lease thereof to a third party for oil and gas purposes, in which such lands are described as a single tract, and there is provision, as in the Pridemore lease, for delivery of one-eighth of the oil to the lessors, "all of the royalty oil so delivered must be divided among the lessors in the proportion that the area of the tract of land owned by each of them bears to the total area of the tract covered by the lease, regardless of the ownership of the tract or tracts of land upon which the well or wells may be drilled from which such oil is produced." Syllabus. *Lynch* v. *Davis, supra,* has not been overruled, but has been expressly distinguished from cases where, after the execution of an oil and gas lease, the land by will, judicial determination or otherwise has been divided, and the lessee under the lease subsequently pro-

duces oil and gas from some of the subdivisions of the land. In those cases the owner of each of the subdivisions has been held to be entitled to the royalties arising from the production from the subdivision owned by him. *Pittsburgh & West Virginia Gas Co.* v. *Ankrom,* 83 W. Va. 81, 87, pt. 1, syl., 97 S. E. 593; *Musgrave* v. *Musgrave,* 86 W. Va. 119, 103 S. E. 302; *Kendall* v. *Hays,* 95 W. Va. 676, 123 S. E. 459; *Robinson* v. *Milam,* 125 W. Va. 218, 24 S. E. 2d 236. In the *Walker* case this Court held that the rule in the case of *Pittsburgh & West Virginia Gas Co.* v. *Ankrom, supra,* and like cases, is a law of property; and, impliedly at least, the case of *Campbell* v. *Lynch,* 81 W. Va. 374, 94 S. E. 739, was overruled by the latter case. Counsel for the Harbours make an effort to distinguish the instant case from *Lynch* v. *Davis, supra,* on the ground that at the time the Pridemore lease was entered into, two of the lessors (the Harbours) had the fee simple title to the Harbour house lot, and Essie Harbour had an undivided interest with the other heirs of Judith Lucas in the remainder of the forty-acre tract. This, in our opinion, is a difference without legal distinction. It is on the basis of a voluntary entry into the Pridemore lease by all of the lessors named therein, in which the property leased is described as a single tract, as in *Lynch* v. *Davis, supra,* that we think the principle enunciated in that case has direct application here.

For the foregoing reasons we are of opinion that the trial court erred, that the decree of that court should be reversed and the case remanded for a decree giving to the lessors in the Pridemore lease their proportionate shares of the royalties derived from all of the forty-acre tract; and that being so the Harbours, having a fee simple title to the Harbour house lot, will be entitled to a slightly larger percentage of the royalties derived from the entire forty-acre tract than will the appellants.

We therefore reverse the decree of the Circuit Court of Cabell County and remand this case with direction that

10

it be dealt with in a manner consonant with the principles herein set forth.

*Reversed and remanded with directions.*