G. W. HAMILTON AND J. H. FERRELL

*v.*

McCALL DRILLING COMPANY, A Corp., *et al.*

(No. 9983)

Submitted September 21, 1948. Decided November 16, 1948.

*Lorentz C. Hamilton,* for appellants.

*S. P. Bell,* for appellees.

RILEY, PRESIDENT:

G. W. Hamilton and J. H. Ferrell, owners, by mesne conveyances, of a one-half interest in the oil and gas underlying a tract of 44 acres, brought the present suit against McCall Drilling Company, a corporation (successor to Hope Natural Gas Company's leasehold rights in three tracts, totalling 158 acres), T. S. Cunningham, and others, to require the defendant, McCall Drilling Company, to deliver to their credit in the pipe lines a 1/7th of the royalty oil produced from two wells, drilled by it subsequent to April 8, 1942, on the leased premises, but outside the 44-acre tract. A producing well had been drilled in the early part of 1929 on the 44-acre tract, and, at the time of the present suit, was still producing. At the time of the completion of this well, or shortly thereafter, T. S. Cunningham, who, in 1915, had conveyed the 44-acre tract to his sister, Victoria Cunningham, had again acquired, by purchase, the fee, less the one-half interest in the oil and gas then outstanding in the plaintiffs.

The circuit court, after considering the bill of complaint, the answer and the exhibits filed therewith, and the testimony in support thereof, found against the plaintiffs and dismissed the suit at their own cost.

In 1909, T. S. Cunningham, the owner in fee of 158 acres in Calhoun County, executed an oil and gas lease for a period of ten years to Hope Natural Gas Company. In 1914 he conveyed 2½ acres out of the 158 acres to T. W. Everson, without exception, and, the following year, 44 acres to his sister, Victoria Cunningham, without exception. In 1918 a second lease was entered into, which became effective as of the termination of the first lease, to-wit, June 16, 1919. This second lease recites that it was made "by and between T. S. Cunningham and Sally Cunningham, his wife, and T. W. Everson and Rosalie Everson, his wife * * * parties of first part, called Lessor, and The Hope Natural Gas Company * * * of the second part", and purported to cover the same 158 acres as contained in the first lease. Victoria Cunningham's name did not

appear in this lease as a party nor was her signature affixed thereto. In 1921, however, the lessee, having acquired knowledge of the fact that Victoria Cunningham was the owner in fee of 44 acres of the 158 acres covered by the lease, requested, and the latter executed, a ratification agreement, whereby she approved and ratified, for the unexpired period, the lease executed by her brother and Everson and their respective wives; and by such agreement did "grant, bargain, sell, ratify and confirm the estate granted, created and demised to lessees or grantees therein, its successors and assigns, in, out of and upon a tract of 158 acres * * * hereby approving and confirming all acts heretofore done and all payments made under and by virtue of the terms of said lease or grant."

Since the completion of the well on the 44-acre tract in 1929 a 1/8 of the oil royalty has been delivered to the Calhoun County Bank, as agent, which in turn has distributed it in the following proportions: 133.5/158ths to Cunningham, 2-1/2/158ths to Everson, and 22/158ths, or approximately 1/7th, to the plaintiffs herein. Subsequent to April 8, 1942, two producing wells were drilled in by McCall Drilling Company on that portion of the 158-acre tract remaining in Cunningham after conveyances out by him to Victoria Cunningham and T. W. Everson. Cunningham contends that he should receive the entire amount of the royalty from the two last-mentioned wells, at least insofar as the plaintiffs (owners of a one-half interest in the oil and gas underlying the 44-acre tract) are concerned. He contends that the inclusion of the 44-acre tract was a mistake of the scrivener, and the so-called ratification of 1921 by Victoria Cunningham could be no more than a lease of the 44-acre tract owned by her.

The present suit is brought on the theory that the owners of the three contiguous tracts had joined in a single lease to McCall Drilling Company's assignor for oil and gas purposes, and, therefore, that the rule in *Lynch* v. *Davis*, 79 W. Va. 437, 92 S. E. 427, applies as to the division of royalty. Under such circumstances, according to the rule laid down by this Court in the cited case, all the roy-

alty derived must be divided among the lessors in the proportion that the area of the tract of land owned by each of them bears to the total area of the tract covered by the lease, regardless of the ownership of the tract or tracts of land upon which the well or wells may be drilled from which such oil is produced.

The sole issue is whether or not the drilling was done under a single lease executed by the owners of the three tracts, totalling 158 acres.

The lease of 1918, signed by T. S. Cunningham and T. W. Everson, purported on its face to lease a tract containing 158 acres, which if true, necessarily included the tract then owned by Victoria Cunningham. Upon discovery of this outstanding interest of the latter, the lessee promptly obtained the ratification from her. Eight years later the defendant, McCall Drilling Company, acting under the lease and the ratification agreement, drilled the first well, the same being located on the 44-acre tract.

T. S. Cunningham, T. W. Everson and the plaintiffs, according to the record, agreed, at least so far as the well on the 44-acre tract is concerned, that the proceeds of sale of royalty oil produced be paid to the Calhoun County Bank, as agent, and distributed by it in the proportions in which it has been doing.

The testimony of the plaintiffs is to the effect that subsequent to the drilling of the well on the 44-acre tract and the appointment of the Bank as agent, it was verbally agreed between the plaintiffs, T. S. Cunningham and T. W. Everson that all royalty oil produced from the 158 acres, including that from the well on the 44-acre tract, should be divided between them according to the acreage in the 158 acres owned by them, respectively. Cunningham, alone, denies such an agreement.

If, as Cunningham contends, the 44 acres was not intended to be included in the lease signed by him, and that his interest in the 44 acres is by virtue of his sister's separate lease he would be entitled, not to the 7/8 which he

took, but a one-half of the royalty. Ratification, in sense of affirmation of contract and waiver of defense to it, is a matter of intention. *Union Trust Co. of Rochester* v. *Allen,* 268 N. Y. S. 437, 239 App. Div. 661, modifying (Sup) 264 N. Y. S. 732, 147 Misc. 885. It is clear from the record that Cunningham was fully informed of the factual situation, and that the position taken by him in 1929 amounted to a recognition and a ratification of a joint lease between the owners of the three tracts included in the 158 acres leased. One who has accepted benefits under a contract, or exercised dominion over property acquired thereunder after knowledge of facts warranting rescission, ratifies the agreement. *Ebel* v. *Roller,* (Mo. App.) 21 S. W. (2d) 214. See also, 12 Am. Jur., Contracts, Sec. 449.

The decree of the circuit court dismissing the plaintiffs' bill is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*