# CHARLESTON.

GEORGE P. ALDERSON V. HORSE CREEK COAL LAND CO. *et al.*

Submitted November 14, 1917.   Decided November 27, 1917.

1. JUDGMENT—*Conclusiveness—Matters   Which   Might   Have   Been Litigated.*

    An adjudication by a court having jurisdiction of ·the subject-matter and the parties is final and conclusive not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the-legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in the former litigation, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits.   (p. 416).

2. PARTITION—*Tenants in Common—Improvements.*

    The fact that a co-tenant has located upon a particular portion of the land of the co-tenancy, and has enhanced its value by making improvements is a circumstance always deemed worthy of consideration by a court charged with the duty of making partition; and if in making such partition the part so improved can be assigned to the co-tenant making the· improvement without doing injustice to the other co-tenant, such assignment will be made.   It is the duty of the court making such a partition to cause the improvements to be assigned to the respective parties who make them, so far as it can be done consistently with an equitable partition of the estate.   (p. 418).

3. SAME—*Tenancy in Common—Enjoining Waste—Division.*

    Ordinarily a court of equity will take jurisdiction at the suit of one co-tenant to enjoin waste being committed on the joint estate by the other co-tenant, by the removal of coal therefrom, but where it appears that the mining operations are of such character that the land from which the coal is taken may, consistently with an equitable partition of said land, be assigned to the co-tenant mining the coal therefrom, and it also appears that great damage would result from enjoining the operation of such mines, a court of equity will refuse such relief, and in partitioning the land will assign the part from which coal has been mined to the co-tenant who removed the coal therefrom.   (p. 419).

Appeal from Circuit Court, Boone County.

Suit for injunction by George P. Alderson against the

Horse Creek Coal Land Company and others. Decree for plaintiff, and the Horse Creek Coal Land Company appeals.

*Affirmed.*

*Watts, Watts & Williamson* and *Thomas A. Bledsoe,* for appellant.

*Frank P. Murphy* and *Linn & Byrne,* for appellee.

RITZ, JUDGE:

The two tracts of land involved in this litigation were formerly owned by R. C. McClaugherty and J. Coleman Alderson, the said McClaugherty owning a one-third undivided interest, and said Alderson the other two-thirds. Both of said tracts of land were placed on the land books of Boone county and assessed with taxes thereon in the names of said McClaugherty and Alderson, and for the years 1895 and 1896 the taxes so assessed against the same were not paid, and they were returned delinquent by the sheriff for such non-payment. Afterward McClaugherty paid one-third of said taxes in order to prevent the sale of his one-third interest in the land, and the interest of Alderson was sold by the sheriff and purchased by F. C. Leftwich and S. E. Bradley. At the instance of the tax purchasers the county surveyor went upon the land when the time came for them to get a deed, and partitioned it in kind, assigning to McClaugherty one-third thereof, and laying off the other two-thirds to Alderson. The clerk of the county court of Boone county made a deed conveying the two-thirds thus assigned as the Alderson interest to Leftwich and Bradley, who subsequently conveyed such interest to J. R. Wingfield, trustee. Wingfield, trustee, also acquired the title to the one-third owned by McClaugherty. The land was placed on the land books in the name of Wingfield, trustee, and his successors in title, and the taxes have been regularly paid thereon ever since. Subsequent to the tax sale J. Coleman Alderson was adjudged bankrupt, and George H. Shrewsbury, his trustee, instituted a suit in the circuit court of Boone county asserting the ownership of the two-thirds interest in the said tract of land, and asking that the tax deeds made to Leftwich and Bradley,

and the deeds made thereunder, be set aside as constituting clouds upon the title of Alderson to his interest in said lands, and averring his willingness to pay two-thirds of the taxes paid by the defendant during the time it claimed the title thereto.   The theory of the bill was that the tax sale was void, and that the deed made under it passed no title.   The defendants to that bill contended that the tax sale was valid, and that Alderson's title was vested in them by virtue of the tax deed, and the subsequent deeds made thereunder.   It was also insisted by the defendants that even though the tax sale was void and passed no title, Alderson's title was forfeited to the State of West Virginia for non entry upon the land books for more than five years, and by reason of the fact that it was in possession of said land under color of title for more than five years, and had paid the taxes thereon, the Alderson title was vested in it by virtue of the provisions of the constitution.   Upon a hearing of this case the circuit court of Boone county dismissed the bill.   From that decree an appeal was prosecuted to this court, and upon the hearing here it was held that the plaintiff was the owner of the two-thirds undivided interest in said tracts of land, and was entitled to have the tax deed, and the deeds made thereunder, set aside as constituting clouds upon his title.   The matters involved on that appeal and the decision of this court thereon fully appear from the opinion of the court.   *Shrewsbury, Trustee,* v. *Horse Creek Coal Land Co.,* 78 W. Va. 182, 88 S. E. 1052.   After the cause was remanded to the circuit court for further proper proceedings, the plaintiff here, George P. Alderson, filed an amended bill and bill of revivor, alleging that since the institution of the original suit the trustee in bankruptcy had made sale of the interest of J. Coleman Alderson in said tracts of land under an order of the District Court of the United States for the Southern District of West Virginia, at which sale he became the purchaser; that said sale had been confirmed to him and a deed made conveying said interests to him, which deed is exhibited with the bill; and further alleging that the defendants had acquired by purchase an outstanding conflicting title to a part of these tracts of land, and contending that this·pur-

chase was for his benefit, as well as for the benefit of his co-
tenant, and averred his willingness to pay his proper part of
the expenses of said purchase; and averred that since the
institution of the suit the defendants had caused the timber
to be removed from the whole of said tract of land, and had
received large sums of money therefor; that it was having
the coal mined from said lands, and had already mined a con-
siderable amount thereof.   The bill prayed that the suit be
revived in the name of said George P. Alderson as plaintiff,
as successor to the right of the said Shrewsbury, trustee, by
reason of his purchase under the order of the Federal Dis-
trict Court; prayed that the land might be partitioned be-
tween himself and the defendant; prayed also that the de-
fendant be required to account for the waste committed by
it upon the land by removing the timber therefrom and the
mining of coal thereon, and for an injunction to inhibit the
said defendant from further extracting the coal from said
land.   The defendant demurred to this bill, and upon this de-
murrer being overruled filed an answer thereto.   In its an-
swer it still claims that it is the owner of the whole of said
tracts of land; that the setting aside of said tax deed did not
prevent it from becoming the owner thereof by reason of ad-
verse possession under said tax deeds as color of title; that
even though it was not the owner of the whole of said tracts
of land it had acquired from another source the Levassor title
which covered a part of these tracts of land; that prior to its
purchase of this Levassor title the same had been adjudged
to be a superior title to that of Alderson in said land, and
that therefore its purchase of the Levassor title was not the
purchase of a conflicting claim to the land of itself and its
co-tenant, and asserting that the plaintiff was estopped to
set up any claim under the Levassor title for the reason that
in the suit in which it was adjudged to be superior to the
Alderson title Alderson was enjoined from ever asserting
any claim to any of the land covered by the Levassor title
under any other title than that title; also averring that it was
true that it had caused the timber to be cut from said lands,
but contended that it ought not to be required to account
therefor because the timber was removed with the full knowl-

edge and acquiescence of the plaintiff and those underwhom he claims; admitting also that it has removed the coal from part of said lands, and had constructed thereon valuable improvements for the purpose of mining said coal, but also contending that these improvements were made, and this mining was done, with the full knowledge, approval and consent of the plaintiff, and claiming that if the court should hold that it was not entitled to the whole of said land, in any partition thereof the part upon which said improvements are made might be assigned to it; and further praying that in case this could not be done, it be allowed the value of said improvements. Exceptions were filed to this answer which, while they are many in number, raise but two questions. The first exception is to so much of the said answer as attempts to set up a claim to part of this land under what is known as the Levassor title, it being the contention of the plaintiff that the question of the interest of the parties in these tracts of land was adjudicated by the former decision of this court, and that the defendant cannot now introduce another title or claim which might have the effect of reversing the former decision; that it is estopped by the judgment of this court on the former hearing; and that even though such estoppel does not exist, the plaintiff and the defendant being joint tenants in said tract of land, upon the acquisition of the Levassor title by the defendant it inured to the benefit of both of them upon the payment by the plaintiff of his part of the expense of purchasing said title, which he avers he is willing to do. The other exception goes to the allegations of the bill averring improvements made upon the land, and asking that compensation be allowed therefor. This exception is based upon the contention that if said improvements were made prior to the former adjudication the defendant's failure to set up a claim for them then is a bar to his setting it up now, and if made since the prior adjudication he is not entitled to any consideration therefor. The defendant tendered an amended answer, the only effect of which is to make the allegations in regard to its interest in the Levassor title more specific. This was likewise excepted to for the same reason that exceptions were taken to the original answer. The court

below sustained all of the exceptions to the answer as tendered and refused to allow the amended answer to be filed, and appointed commissioners to make partition of the land, and also referred the cause to a commissioner to take an account of the waste committed thereon by the defendant, refused to grant the injunction prayed for, but required defendant to give an indemnifying bond to save the plaintiff from injury by reason of the extraction of further coal from said land. From this decree the defendant prosecutes this appeal, alleging that the court erred in overruling the demurrer to the amended bill, in sustaining the exceptions to its answer and amended answer, in referring the cause to a commissioner to take an account of the waste committed and appointing commissioners to partition the land. The plaintiff assigns the action of the court in refusing to grant him an injunction against the further extraction of coal from the land as cross error.

It is insisted on the part of the plaintiff that the defendant will not be allowed in its answer to set up any claim to this land to defeat his interest therein, for the reason that that interest has been established by the former adjudication of this court. That an adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject-matter of the action, is a firmly established doctrine. It is not essential that the matter should have been formally put in issue upon the former litigation, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. 15 R. C. L. 969; *Western Mining & Mfg. Co.* v. *Virginia Cannel Coal Co.,* 10 W. Va. 250; *Corrothers* v. *Sargent,* 20 W. Va. 351; *Tracey* v. *Shumate,* 22 W. Va. 474; *McCoy* v. *McCoy,* 29 W. Va. 794; *Sayre* v. *Harpold,* 33 W. Va. 553; *Rogers* v. *Rogers,* 37 W. Va. 407; *Blake* v. *Ohio River R. R. Co.,* 47 W. Va. 520; *Biern* v. *Ray,* 49 W. Va. 129; *St. Lawrence Co.* v. *Holt & Matthews,* 51 W. Va. 352; *State* v. *Hicks,* 75 W. Va. 767; *Koontz* v. *Mylius,* 77 W. Va. 499. But the

defendant contends that the Levassor title was not involved
upon the former hearing, and that it was not necessary for
it to set up that title then in order to get the benefit of it as
a defense.   It is quite true the plaintiff in that bill did not
refer to the Levassor title; he did not rely upon it; in fact,
there is no averment in the bill in regard to it, but that fact
did not prevent it from becoming a good defense to the bill in
*toto* or *pro tanto* as it might cover the whole or a part of the
land in controversy.   The fact that the plaintiff in his plead-
ing does not set up the defenses which may be made to his
case does not preclude the defendant from presenting them,
nor does it excuse a failure upon his part to present any de-
fense which he may have that would defeat the claim asserted
by the plaintiff.   The contention of the defendant was that
the plaintiff had no title nor interest in either of these tracts
of land.   It relied upon the tax sale and the transfer of plain-
tiff's title under the provisions of the constitution to defeat
any claim plaintiff might have to the land.   It now by its
answer says that it has two other defenses, one of which en-
tirely defeats the plaintiff's claim to any of this land, to-wit,
that it has had the adverse possession thereof under color of
title for sufficient time to bar plaintiff's right of recovery;
and, second, that it has acquired an outstanding title which
covers a part of these tracts of land, which title plaintiff is
enjoined from claiming under.   Why did it not make these
defenses in the first suit?   They were just as available to it
then as they are now; they would have been just as effective
then as now.   Its defense of adverse possession was just as
full and complete then as it is now, and while defendant's
claim of defense under the Levassor title might not extend
to defeat the whole of plaintiff's claim, it would have been
just as effective as a defense to the original bill to defeat the
claim of plaintiff to that part of the land covered by that
title as it could be now.   The fact that a defense does not go
to defeat the plaintiff's entire right of recovery does not pre-
serve it for future reliance in case it is not relied upon when
the opportunity is given to make it.   Ordinarily but one op-
portunity is given a defendant to make defense, and if he
fails to present all of the matters which are available to him

to defeat the plaintiff's right in whole or in part, he will be forever barred from thereafter presenting them. This seems to be the well established doctrine of the authorities cited above. We are, therefore, clearly of the opinion that the court did not err in denying the defendant the right to set up these additional defenses to the bill.

The defendant insists that the court erred in sustaining the exception to that part of its answer setting up a claim for improvements placed upon the real estate. The answer alleges that the improvements made upon this real estate by the defendant, and those claiming under it, can in an equitable partition of the estate, be assigned to it, and if this is true such an assignment should be made. While a court of equity in many cases will not allow one co-tenant compensation for improvements placed upon the common property, neither will it allow the other co-tenant to take advantage of such expenditures if an equitable division of the property can be made between the parties and this result prevented. In other words, if one of the co-tenants has improved the joint property at his own expense, a court of equity in partitioning the property between them will see to it that the part upon which the improvements have been made is assigned to the party making them, without charging him with the improvements that he has placed upon it, unless to do so would prevent an equitable partition of the land. In this way he is given the benefit of the expenditures he has made, and his co-tenant is not allowed to take an unconscionable advantage of him. Freeman on Co-tenancy and Partition, §509, and authorities there cited. In this case the court found that the plaintiff was entitled to have the land partitioned, and we think this is in accordance with the holding of this court on the former appeal. The defendant in its answer alleges that all of these improvements have been placed upon a small part of the land, and that that part can be assigned to it without doing injustice to the plaintiff. If this allegation is true, then it will be the duty of the commissioners to assign to the defendant the part of the land upon which its improvements are without considering the improvements as a part of the value thereof, and to the plaintiff the other part. It will

thus be seen that the question of whether or not the defendant is entitled to recover for improvements put upon the land, in case it cannot be partitioned so as to assign it its improvements does not yet arise. If the allegations of the defendant's answer are consistent with the facts, this question never will arise, for the very good reason that it will get its improvements upon its part of the land. If it should turn out hereafter that the land cannot be partitioned so as to give to the defendant that part upon which its improvements are placed, then its claim for an allowance for these improvements will become a live one, and may be the subject of a supplemental answer, if indeed any pleading is necessary for the purpose.

It remains for us to dispose of plaintiff's cross assignment of error. The court refused to grant the plaintiff an injunction restraining the defendant from extracting further coal from the common property. It sufficiently appears that a very small quantity of coal has been taken from this large tract of land, certainly nothing like one-third thereof, and from the answer of the defendant it appears that the part of the land so mined under is close to its improvements, so that in any partition of the land it may well be assumed that this part of the land upon which defendant's mining operations have been conducted, including the part from under which it has taken the coal, will be assigned to it, and that in making the assignment the commissioners will treat it as though the improvements had not been made, and as though no coal had been taken out, that is, they will add nothing to the value of the land because of defendant's improvements, if these improvements are assigned to it, nor will they take anything from it because of coal extracted therefrom by the defendant, should the defendant get the part of the land from which the coal has been taken. No doubt the court below took this view, believing that in the final determination of the case the plaintiff would receive his share of the property free from any waste which may have been committed by the defendant because of coal mining. Should it hereafter appear that the property cannot be divided so as to give to the defendant the part upon which its improvements are placed, and from

which it has extracted coal, then the question will arise as to an accounting for the coal mined and the improvements made, if the defendant is entitled to any compensation therefor, and the motion for the injunction may at that time be renewed. It is true the decree entered in this cause directing a partition of the land does not advise the commissioners to assign to the defendant that part of the land upon which its improvements are erected if the same can be done consistently with an equitable division of the land, and without charging it for such improvements. It will be presumed, however, that the commissioners will exercise the powers conferred upon them by the court in a lawful manner, and should they fail in this regard the defendant may take advantage of such failure by exceptions to their report. The commissioner to whom the cause was referred to take an account was directed to ascertain the amount of coal removed from the land by the defendant, or its lessee, and the value thereof. This information in one view of the case may be valuable to the court, and in another view it may be of no value. Of course, if the part of the land from which the coal is taken is assigned to the defendant as though the coal still remained in it, it would be improper to charge it anything for the coal extracted therefrom. If, on the other hand, it is found that an equitable partition cannot be made by assigning this land to the defendant, this information may be valuable to the court in awarding compensation to the plaintiff for the coal extracted from the common estate. The court further directed the commissioner to ascertain the quantity of timber removed from the land and the value thereof; also the amount necessary for the plaintiff to pay because of taxes and other expenses incurred by the defendant in regard to the common property. We see no error in the decree in this regard. It is alleged in the bill and admitted in the answer that the defendant has sold the timber from the whole tract of land, and the defendant should be required to account to the plaintiff for his part of the value thereof, less any amount which the plaintiff may owe the defendant for taxes paid upon the land and other expenses incurred by it in protecting the common property.

The bill in this case is demurred to upon the ground that it is multifarious, and upon the ground that it introduces a new cause of action. We do not find that there is any merit in this demurrer; there is no new cause of action introduced in this bill from that set up in the original bill. The only purpose of this bill is to revive the suit in the name of the present owner of the land, and to have the land partitioned and an account taken of the waste committed thereon since the filing of the former bill. These are not new matters and make no new case, but are entirely consistent with and may be granted upon the allegations contained in the original bill, except to the extent that they are based upon facts which have come into existence since the filing of that bill. Nor do we think the bill is multifarious. The interests sought to be affected all grow out of the same subject-matter and are involved in the controversy between the parties. It is entirely proper for a court of equity having taken jurisdiction of this controversy to do whatever may be necessary to settle all controverted matters between the parties touching the particular subject-matter, and to partition the land between the parties, if either of them desire that to be done, to the end that in this one suit the rights of these parties in this land may be finally, definitely and forever determined.

It follows from what has been said that the decree complained of will be affirmed, and the cause remanded to the circuit court of Boone county for further proper proceedings.

*Affirmed.*