# CHARLESTON.

MARGARET L. FISHER *v.* PHILANDER K. TETER *et al.*

Submitted November 15, 1921. Decided December 6, 1921.

1. WILLS—*Rights of Devisees Under Prior Oil and Gas Lease Stated.*

   The rules and principles announced in *Pittsburg and West*

*Virginia Gas Company* v. *Ankrom*, 83 W. Va. 81, and *Musgrave* v. *Musgrave*, 86 W. Va. 119, are reaffirmed and applied to the facts alleged in the bill in this case. (p. 696).

2. SAME—*Complaint Held Not to Show that Defendants Fraudulently Prevented Drilling on Plaintiff's Land.*

. The principles of those cases are controlling in this case, notwithstanding the general allegations of fraud and collusion between the operating lessees and the owners by devise or partition of lots adjoining the lands of plaintiff. Applying the rules of pleading announced in *Hall* v. *South Penn Oil Company*, 71 W. Va. 82. (p. 696.)

(POFFENBARGER and LYNCH, JUDGES, dissent.) ·

Appeal from Circuit Court, Lewis County.

Bill by Margaret L. Fisher against Philander K. Teter and others. Decree for defendants on demurrer, and complainant appeals.

*Affirmed.*

*Herbert M. Blair* and *Linn Brannon,* for appellant.

*Charles P. Swint, Robert L. Bland, A. B. Fleming, Charles Powell, Kemble White,* and *Edward A. Brannon,* for appellees.

MILLER, JUDGE:

Plaintiff is the sister of the defendants Philander K. Teter and Jesse H. Teter, and all are devisees and heirs of David Teter, who died testate in 1912. By his will the testator devised his farm of 528.97 acres in Lewis County, as follows:

"To my daughter Margaret Lancaster Fisher the tract of fifty acres known as the Jesse Moneypenny tract adjoining lands of E. C. Fisher. I also will to Margaret Lancaster Fisher another fifty acres to be cut off my home farm beginning at a south east corner, near the present residence of John Horton, thence running along the old fence line a southerly course eight rods, thence to the top of the hill on Neds run so as to contain fifty acres. Making a total to her 100 acres in the two tracts. After deducting said fifty acres from the right hand side of road.

I will and bequeath to my son Jesse Hamilton all of the

lands on the right hand side of the Murphys creek as you go up the creek. And all of the lands on the left hand side as you go up Murphys Creek to my son Philander K. Teter upon a survey it is found that that part of the home farm willed to Jesse H. contains a greater number of acres than the part willed to Philander K. then Jesse H. is to pay to Philander K. twenty dollars per acre within six, twelve and eighteen months in three equal payments."

The will was dated July 13, 1901. Prior to that date, namely, on August 18, 1899, the said David Teter and A. L. Teter, his wife, executed and delivered to Andrew Edmiston a lease on said larger tract for oil and gas, bounding it by the lands of adjoining owners, and further describing it as containing 512 acres, more or less, and containing the covenants and agreements usually contained in such leases, for the term of five years and so long thereafter as oil and gas might be produced in paying quantities, which lease came by assignment to The Philadelphia Company of West Virginia, the Hope Natural Gas Company, and the South Penn Oil Company, the present owners thereof.

The bill alleges that shortly after the death of said testator Philander K. and Jesse H. Teter procured a surveyor to make a survey and a plat of the entire tract so devised, and designated thereon the several lots allotted to each of the said devisees by said testator, which plat was placed on record by them, a copy of which is exhibited with the bill; that subsequently to the making of said survey and plat, and in accordance therewith, division fences were built and continuously since then have been maintained along the boundary lines between the several parcels so designated and held by the devisees under the terms of the will, and so definitely fixed by said survey and plat; and that the devisees aforesaid thereupon assumed and took exclusive possession and control of their respective parcels; and have since so occupied the same as their own.

The bill alleges further that said will was executed before any development of said land for oil and gas, and that to construe said will so as to permit two of the devisees there-

under to consume and enjoy the fruits of said leasing would
be contrary to the manifest purpose of the testator, and re-
pugnant to the intention on his part to dispose of said tract
of land among his devisees and according to the nature of
an indulgent and considerate father.

The prayer of the bill is for an accounting to plaintiff by
said Philander K. and Jesse H. Teter, and that they pay
over to her her proper share of all gas well rentals or royal-
ties collected or secured by them, or either of them, by reason
of or from any and all gas wells drilled or operated on any
part of said land, and that her right to share in the future
in the rents and royalties and in all the oil and gas produced
from said lands, under said lease, be adjudicated and de-
termined.

It is conceded that the decree below sustaining defendants'
demurrer to and dismissing her bill must be affirmed, unless
we should determine to overrule prior decisions, or should
consider other allegations thereof, to be now referred to, take
this case out of the rule of those decisions, and constitute
sufficient ground for distinguishing it from the cases relied
on by demurrants, and upon which the court below based its
decree.

In *Pittsburg and West Virginia Gas Company* v. *Ankrom,*
83 W. Va. 81, and *Musgrave* v. *Musgrave,* 86 W. Va. 119, we
distinctly decided, that where land subject to a prior lease
for oil and gas has been partitioned, or devised in severalty
by a testator, as in the case at bar, the owner of each of the
subdivisions from which oil or gas is produced is entitled
to recover the rents and royalties arising from the subdivi-
sion owned by him. Those cases received thorough consider-
ation by the court, after elaborate arguments by counsel;
and nothing that we could now say in support of the prin-
ciples there established, would add to or detract from the
arguments advanced and maintained therein; and our opin-
ion is to reaffirm the points adjudicated therein. Those
cases are conclusive of this case unless, as already suggested,
something has been alleged by plaintiff to take the case from
under the principles of those cases.

The allegations relied on, we do not think show any fraud

or collusion on the part of the defendants affecting the rights of plaintiff. They are as follows:

"Plaintiff further says that no drilling whatever has been done by any of the said operating companies on the parcel of said Teter tract allotted to her, although plaintiff's said parcel is covered by said lease and is held thereunder to the exclusion of plaintiff and all persons with whom she might contract for the drilling and exploration of her said parcel for oil and gas; and plaintiff here alleges that, although she, and those acting for her, have requested said Hope Natural Gas Company and said Pittsburg & West Virginia Company, and its predecessors, The Philadelphia Company of West Virginia, to test plaintiff's said parcel for oil and gas by drilling and completing wells thereon, they, and each of them, have declined and refused so to do on the ground that said Teter tract had been adequately and sufficiently drilled and developed by the existing wells on said parcels of said Philander K. Teter and Jesse H. Teter.

"Plaintiff further says that, although she is in nowise responsible therefor, the operations of the said Companies engaged in developing said land for oil and gas have been restricted and confined to a limited portion of same and have not been such as to adequately and properly test and explore for gas or oil the entire Teter tract bound by said lease without regard to the surface lines and boundaries defining and separating the parts severally held by said Philander K. Teter, Jesse H. Teter and plaintiff, but that in drilling said Teter tract of land, said operating companies have persistently and unalterably pursued a policy of confining the drilling to the parts of said tract of land held by said Philander K. Teter and Jesse H. Teter.

"Plaintiff further says that said policy of limiting the drilling to the portions of said land so devised to said Philander K. Teter and Jesse H. Teter, as aforesaid, has been adopted and consistently adhered to by said operating Companies, as plaintiff is informed and believes, as a result of various arrangements and understandings from time to time entered into and had between said Philander K. Teter and Jesse H. Teter, cooperating with each other in the matter, or acting independently, and said operating Companies, or their officers and agents, whereby said Philander K. Teter and

Jesse H. Teter have contrived to have said drilling confined and restricted, as aforesaid, and that pursuant to further arrangements and understandings entered into and had between the said Philander K. Teter and Jesse H. Teter and the said operating Companies, or their officers and agents, said Philander K. Teter and Jesse H. Teter have until a comparatively recent date, contrived and managed to have paid to them; and have been taking, appropriating and enjoying all of the gas well rentals and royalties paid for the gas wells on said Teter tract to the exclusion of plaintiff and in total disregard of her rights therein.''

What the rights of plaintiff may be against the operating companies, if the facts be as they are alleged in the first and second paragraphs of the bill quoted, we need not say, for the question is not presented. But it may be said without hesitancy that the failure or refusal of the lessees to perform any of the covenants, express or implied, in the lease can constitute no ground upon which plaintiff can lawfully demand an accounting by the other devisees for the rents and royalties received, or produced from the land allotted to them by the testator. Nor will the fact alleged in the third paragraph, if true, that the policy of the operating companies in confining their operations to the land devised to Philander K. or Jesse H. Teter, respectively, which plaintiff on information and belief alleges to be the result of various arrangements and understandings from time to time entered into and had between them, coporating with each other, or acting independently, and said operating companies, their officers and agents, whereby they contrived to have the drilling confined and restricted to their land, to the exclusion of plaintiff's land, entitle plaintiff to the relief she is seeking by her bill.

It is not alleged that plaintiff's land has sustained any drainage of oil or gas from the operations on the parcels devised to her brothers. The bill contains no allegation as to the location of the wells drilled on their land with reference to her land. It is not unlawful for one adjoining owner to persuade a lessee to first drill and develop his land subject to such common lease, provided no injury is done to the land of the other; and certainly he could not be compelled to account

to the unsuccessful contestant for the right of priority in development for oil or gas produced on his land by such prior development, unless, as said, there resulted unlawful drainage and fraud therein injuriously affecting the land of such adjoining owner.

The case here presented is unlike that presented in *Steel* v. *American Oil Development Company,* 80 W. Va. 206; *Grass* v. *Big Creek Development Company,* 75 W. Va. 219; and *Jennings* v. *Southern Carbon Company,* 73 W. Va. 215. The first two of these cases were actions at law against the lessee for damages for failure to develop resulting in damage. The last case was a suit in equity for failure to develop, and for a cancelation for breach of the implied covenant to properly develop the leased land, in which case we reversed the decree below sustaining the demurrer to the bill, and remanded the cause for further proceedings. In the case of *Hall* v. *South Penn Oil Company,* 71 W. Va. 82, the bill which sought cancelation of a lease and did contain charges of drainage and fraud, was held bad because too general and as alleging mere conclusions of law and not facts sufficient to sustain the bill. In *Steel* v. *American Oil Development Company, supra,* we held that a lessor in an oil and gas lease may maintain a suit in trespass on the case to recover damages for injury sustained by him because of the failure of the lessee to drill wells necessary to save the oil on his land and prevent it from being drained by wells on adjoining land. May not the relief suggested by these authorities be invoked where the lessee of an entire tract fails to develop the whole to the extent necessary to protect the rights of all owners, or parts thereof, subject to the provisions of the lease? This is a question mooted, but not decided.

For these reasons we affirm the decree sustaining the demurrer and dismissing the bill.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting):*

For reasons elaborately stated in *Campbell* v. *Lynch,* 81 W. Va. 374, and in my dissenting opinion in *Musgrave* v. *Mus-*

*grave*, 86 W. Va. 119, 124, I am unable to concur in the decision of this cause, and I respectfully dissent. Regarding the facts involved in *Pittsburgh & West Virginia Gas Co.* v. *Ankrom*, 83 W. Va. 81, and *Musgrave* v. *Musgrave* as constituting exceptions to the general principles expressed by me, as aforesaid, and this case as falling within those principles, Judge Lynch also dissents, and authorizes me to say for him, that he regards the decision in *Campbell* v. *Lynch* as being correct and the views expressed by me in *Musgrave* v. *Musgrave* as being generally sound and applicable in ordinary cases of the kind here involved.

I cannot forego this opportunity to make some observations respecting the possibility of relief to the plaintiff and others similarly situated in some form other than that sought by the bills in this and the other cases above referred to. Her situation is admittedly one of hardship. All of the decisions enunciating the rule applied here by a majority of the Court concede this. When it is pressed upon the attention of the courts adopting the rule, they either make a feeble and unsatisfactory response or suggest remedy in some other form without indication of its character.

Could this plaintiff, upon the facts alleged in her bill, showing the rankest kind of discrimination against her and deprivation of the use of her land, in so far as it is useful for oil and gas production, compel the lessee to drill wells on it? Certainly not. *Ammons* v. *South Penn Oil Co.*, 47 W. Va. 610; *Harris* v. *Coal Co.*, 57 O. St. 118; *Koch* v. *Balliet's Appeal*, 93 Pa. St. 434; *McKnight* v. *Kreutz*, 51 Pa. St. 232; *Paschall* v. *Passmore*, 15 Pa. St. 295; *Harness* v. *Eastern Oil Co.*, 49 W. Va. 232; *Colgin* v. *Oil Co.*, 194 Pa. St. 234; *Young* v. *Oil Co.*, 194 Pa. St. 243. Could she have the lease canceled as to her land? Emphatically, no. *McGraw Oil Co.* v. *Kennedy*, 65 W. Va., 595; *Core* v. *Petroleum Co.*, 52 W. Va. 276; *Kellar* v. *Craig*, 126 Fed. 630. See also the cases cited in support of the answer to the former question.

Can she recover damages for failure to drill her land or failure so fully to develop the whole lease as to test her part of the land? No. The difficulties she would have to overcome in an effort of that kind are disclosed in *Grass* v. *Big*

*Creek Dev. Co.,* 75 W. Va. 719, in which it is held that, if "the operator exercises a sound and honest judgment, and not an unreasonable or arbitrary one, in continuing operations for mineral oils, he has faithfully discharged the duties implied devolving upon him by virtue of the lease, although he may not exercise that high degree of diligence which the exaggerated expectations of the land owner may demand." If she could, the remedy would be inadequate. No man, no jury, could more than approximate the damages, and it may well be doubted whether approximation is attainable in any action for damages for breach of a covenant to drill for oil or gas. Nothing but the drill can determine whether any piece of land has oil or gas in it, and the lessee with his experts can practically demonstrate that there is none in any given parcel of land not drilled.

In a case of this class, the lessee cannot be required to treat each of the separate parcels of land covered by his single lease, as a separate lease, and to protect all of the lines by off-set wells. Any judgment or decree founded upon such a theory would so define and apply the law as to impair the obligation of the lease contract, in violation of provisions of both the federal and state constitutions. When made, his lease required him to protect only the exterior boundary lines limited in number, ordinarily, to four or five. If he is required to protect a dozen or more interior lines made in dividing the land, in addition to the exterior ones, his obligation is multiplied several times, and the increased obligation is based upon no act or assent of his. His lease conferred right to take out all the oil and gas, burdened with an obligation to protect exterior lines only. That right would be partially denied him, if he were required to protect interior lines also. The value of the right originally conferred by the lease is depreciated proportionately with the extent of the burden imposed upon him by the construction necessary to make each parcel virtually a separate lease. His right is the correlative of the lessor's obligation. When it is diminished by construction the obligation is correspondingly reduced, and the right of the lessor enlarged. A clearer

case of impairment of the obligation of a contract could hardly be imagined.

The rule adopted by the majority opinion makes the owners of the several parcels into which the leased tract has been divided separate lessors of their respective parcels. They are as separate, distinct and strange to one another as if the parcel of each was the sole and only subject matter of a separate lease executed by him. Each owns exclusively the oil and gas in his own parcel and has no interest direct, indirect or collateral in the oil or gas of any other tract. Consistency with this theory requires of its adherents the further holding that the lessee, thus holding separate leases, shall protect the interior division lines as well as the exterior lines, in cases of production in such close proximity thereto as will cause drainage. If not, he may take out all of the oil and gas from several small tracts into which the whole has been divided, by means of one or more wells located on one of them and so give the owner of that one all of the minerals in all of the parcels, except the royalty. In the case of a lease of an oil bearing tract divided by partition, subject to the lease, among four owners, the lessee must either drill four wells, where one would do, or give the owner of one parcel the minerals in all of them. It requires him to go beyond the obligation originally imposed upon him by the lease or to rob three owners for the benefit of one, or if there is corruption between him and that one, for the benefit of himself and the favored lessee.

To say the lessee of the entire tract may be required to develope and work it as a whole, with diligence, by virtue of an implied covenant, or incur liability in damages for failure to do so, does not cover the entire situation, and that is the utmost right against him, that seems to have any real basis in judicial suggestion. He can diligently prosecute his enterprise within the meaning of this suggestion, without protection of interior division lines, and to the ruin of some of the separate owners within the exterior lines. He can comply with the implied covenant without such protection; but, to deal fairly and justly with all of the lot owners and to maintain the relation of separate lessee to each of them, he

must go beyond that covenant, to the extent of protecting the interior lines. Requirement of that on his part would work a radical and fundamental change in his contract, amounting to an impairment of its obligation.