IDA WALKER *v.* WEST VIRGINIA GAS CORPORATION

(No. 8817)

OLUM ADKINS *v.* WEST VIRGINIA GAS CORPORATION

(No. 8818)

Submitted May 2, 1939. Decided May 16, 1939.

*Peyton, Winters & Hereford,* for plaintiffs in error.
*Russell W. Morris,* for defendant in error.

Fox, President:

On May 1, 1924, Rush Adkins leased to Irvin Morrison, for oil and gas purposes, for a term of ten years, a tract of 160 acres of land located partly in Wayne County and partly in Cabell County. This lease, through various assignments, became and is now the property of the West Virginia Gas Corporation. Rush Adkins died, intestate, in August, 1924, leaving eight children as his sole heirs at law, and in February, 1925, there was a voluntary division of the 160 acres, whereby the tract was partitioned into eight parcels, and conveyances made to carry the partition into legal effect, without any reference to the oil and gas in said tract, or the distribution of royalties under said lease. Subsequent to said partition, the title to some of the parcels was transferred, and at the date of the institution of these actions, and the Mitch Hale suit hereafter mentioned, the entire 160 acre tract of land was owned, in different acreages, by Henry Adkins, William J. Adkins, Ida Adkins Walker, Olum Adkins and

Mitch Hale. After the death of Rush Adkins, and after the partition of the 160 acres, the delay rentals provided for in the lease were paid to the owners of the several parcels in proportion to the acreage owned by each. In October, 1933, during the life of the lease, a producing gas well was drilled by the defendant on that portion of the 160 acres then owned by Henry Adkins, and, presumably, the royalties stipulated to be paid upon the completion of a well thereafter took the place of the delay rentals paid prior thereto. On the completion of the well, Henry Adkins made claim to all royalties accruing under the lease from the well drilled on his land, while owners of other parcels of the 160 acres, including the plaintiffs in these actions, contend that they are entitled to a proportionate share of the royalties, based upon the acreage of the tract owned by each, respectively, and regardless of where on the leased premises a well is drilled. It is alleged in the notice of motion of Ida Walker that the total of the royalties which have accrued from the well to April 16, 1937, is $1050.00, and that by reason of her ownership of 33 acres of the 160 acre tract, she is entitled to recover the sum of $216.48; and in the notice of Olum Adkins, that he is entitled to $160.72, based on his ownership of 24.5 acres of said tract.

At this point it becomes necessary to discuss the suit in equity instituted in the circuit court of Cabell County, in the year 1935, by Mitch Hale against West Virginia Gas Corporation, Henry Adkins, William J. Adkins, Ida Adkins Walker and Olum Adkins, in which the plaintiff therein asserted the identical claim now being made by the plaintiffs in the actions now before the court, namely: the right to a proportionate share of the royalties accruing from the well drilled on the Henry Adkins parcel of the original tract of 160 acres covered by the oil and gas lease. A claim asserted in said equity suit with respect to off-set wells to protect the entire 160 acres was eliminated from the case on procedural grounds, and the cause decided on the naked question of the right of Hale to share in the royalties. The final decree of the trial court,

entered on November 6, 1935, determined that the plaintiff, based on his proportionate acreage, should share in the royalties which had accrued or might accrue under the Rush Adkins lease. An application for an appeal from this decree by Henry Adkins was refused by three judges of this court, acting in vacation, on December 17, 1935. It is stipulated that the record in this cause may be considered in the decision of the instant cases on the question of *res adjudicata* as argued in the briefs; and it was agreed in argument that the allegation with respect to the *Hale* case made in the Ida Walker case should be considered as having been made in the Olum Adkins case.

Plaintiffs in error proceeded in the circuit court of Cabell County by separate notices of motion to collect their claims. In each case a demurrer was interposed by the defendant to the notice of motion and was sustained by the court, and the actions dismissed, to which ruling in each case the plaintiff therein prosecutes a writ of error. It is agreed that the two actions, which are identical as to the legal principles involved, be heard together.

Plaintiffs in error say (1) that upon the record presented they are entitled to their proportionate share of the royalties from the well drilled on the Henry Adkins portion of the 160 acres covered by the Rush Adkins lease; and (2) that the decree of the court in the Mitch Hale case is *res adjudicata* of their right to recover on the demands asserted by them herein. To sustain their first proposition they rely upon *Lynch* v. *Davis,* 79 W. Va. 437, 92 S. E. 427, L. R. A. 1917F, 566, and *Campbell* v. *Lynch,* 81 W. Va. 374, 94 S. E. 739, L. R. A. 1918B, 1070. To rebut this contention defendant cites the later cases of *Pittsburgh & W. Va. Gas Co.* v. *Ankrom,* 83 W. Va. 81, 97 S. E. 593, 5 A. L. R. 1157; *Musgrave* v. *Musgrave,* 86 W. Va. 119, 103 S. E. 302, 16 A. L. R. 564; and *Fisher* v. *Teter,* 89 W. Va. 693, 109 S. E. 896, which it claims overrule, in effect, the decisions in the two cases first cited, particularly the case of *Campbell* v. *Lynch.* We think the case of *Lynch* v. *Davis, supra,* may be distinguished from the other cases cited, because in that case the court con-

sidered a lease executed by the litigants, and the question involved grew out of the contract relation created thereby; whereas, in the other cases, the lease in question was made by a predecessor in title, and the land covered thereby afterwards partitioned, either voluntarily or through a legal proceeding. But it is clear to us that the rulings of this court in the three cases last cited above amount, in effect, to the substitution of a different doctrine from that announced in *Campbell* v. *Lynch*. The controversy pictured in all these cases originated in 1917, and the decision in the case last cited was made in 1921, and the rule therein announced has, in our opinion, become a rule of property, with reference to which, we may assume, contracts have been made, and rights have accrued and become vested. We are not persuaded that the controversy is one which should be re-opened and thus bring about a feeling of uncertainty on this very important feature of the law relating to oil and gas. The question involved is one that many years ago engaged the talents of able lawyers and judges, as will be seen from a reading of the cases cited above; their views were widely divergent, as ours might be did we feel at liberty to reopen the question. Our view is, and we so hold, that the rule announced in the cases of *Pittsburgh & W. Va. Gas Co.* v. *Ankrom, supra; Musgrave* v. *Musgrave, supra;* and *Fisher* v. *Teter, supra,* is the settled law of this state, and that the application of this rule by the trial court in the instant cases was justified and should be affirmed in principle.

However, this ruling is not determinative of the cases before us. The question of the effect of the decree in the case of *Mitch Hale* v. *West Virginia Gas Corporation* remains to be considered. This question would more properly arise on the trial of the cases, but in view of the allegations in the notice of motion with respect to the *Hale* case, and the recognition of counsel that the question is of controlling importance, we treat it as properly raised on the record. As noted above, every person interested in the 160 acres covered by the Rush Adkins

lease, including the parties to these actions, was a party to that suit, and it is clear that the holding in that case fully sustains, in principle, the claims of the plaintiffs in error. The question is the effect of that decision, as a practical matter, on the pending claims.

"A fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties in the same, or any other court. It is *res judicata*. But to make it *res judicata,* it must have been *directly,* and not *collaterally,* in issue in the former suit, and there decided." *Western M. & M. Co.* v. *Coal Co.,* 10 W. Va. 250. It is not necessary that precisely the same parties be before the court in the different suits if the subject matter of the controversy is the same. *Corrothers* v. *Sargent,* 20 W. Va. 351; *McCoy* v. *McCoy,* 29 W. Va. 794, 2 S. E. 809. In *Sayre's Adm'r.* v. *Harpold,* 33 W. Va. 553, 11 S. E. 16, this court, speaking through Judge Snyder, held:

> "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*"

In *St. Lawrence Co.* v. *Holt,* 51 W. Va. 352, 41 S. E. 351, Holt and Mathews were held bound by a decree entered for the sale of land, in a case involving the enforcement of a lien by other parties against the land, a portion of which the bill alleged was claimed by Holt and Mathews. While parties served with process, they did not plead or answer, and in a subsequent ejectment suit against them they were precluded from asserting title to any of the

land involved in the former suit, because of the fact that they could have asserted their claim in the former suit and not having done so, the decree in that case was *res judicata* as to them. See also *Alderson* v. *Horse Creek Coal Land Co.*, 81 W. Va. 411, 94 S. E. 716; *Drake* v. *O'Brien*, 99 W. Va. 582, 130 S. E. 276; *Zirkle* v. *Moore-Keppel Co.*, 110 W. Va. 535, 158 S. E. 785. The fact that the decree which became final may have been erroneous does not lessen its force under the doctrine of *res adjudicata.* *Sayre's Adm'r.* v. *Harpold, supra.*

In the *Hale* case the plaintiff asserted that by reason of his ownership of a part of the 160 acres of land leased by Rush Adkins, he was entitled to a proportionate share of the royalties accruing under that lease from any well drilled on the 160 acres whether on his portion or that of some other owner. The fact that he sued because his alleged share of the royalties resulted from the well drilled on the Henry Adkins lot is not material. It is the nature of his claim that is important. If his claim was to be established to a part of the royalties from the Henry Adkins well, then, in principle, it would be extended to a well which might be drilled on the portions of the 160 acre tract owned by Ida Adkins Walker, Olum Adkins and William J. Adkins, so he properly made each of them parties to his suit along with Henry Adkins and the Gas Corporation. The rights of Ida Adkins Walker and Olum Adkins were in issue. The fact that they did not plead or answer is not important. *St. Lawrence Co.* v. *Holt, supra.* When Hale secured his right to share in the well drilled on the Henry Adkins' tract, he at the same time established his right to share in any well that might be drilled anywhere on the 160 acres, if drilled under the Rush Adkins lease. The trial court so decreed. Therefore, Ida Adkins Walker and Olum Adkins lost their right to the full royalties which might accrue from a well drilled on their portions of the 160 acres, and if they are bound by this decree, why are not the other parties also bound? The decree opened the way to Mitch Hale, Henry Adkins and William J. Adkins to share in the royalties from wells

drilled on the lands of the plaintiffs in the instant cases, and if so, why does it not at the same time, as a matter of mutuality under the decree, establish the right of the plaintiffs to share in the royalties from wells drilled on any portion of the leased premises? We do not think it will be contented that if the Gas Corporation, after the decree in the *Hale* case, had distributed royalties to the other owners of the 160 acres, in the same manner it was required to pay Hale, it would not have been protected under the decree; and so we think that this decree, while it may have been erroneous, is binding on each and every party to the suit in which it was entered, and is *res adjudicata* of the rights of the plaintiffs to share in the well heretofore drilled on the 160 acres, as well as their right to so share in wells drilled, under the existing lease, on any other portion of the original tract; it follows that should a well be drilled on the land of either or both the plaintiffs, they would be required to share royalties therefrom with the other owners of the 160 acres.

The judgment of the circuit court in each of the above styled actions is reversed and said actions remanded for further proceedings.

*Reversed and remanded.*