RUBY ROBINSON *et al. v.* O. V. MILAM *et al.*

(CC 655)

Submitted October 13, 1942. Decided December 15, 1942.

*H. D. Rollins* and *M. O. Litz,* for plaintiffs.
*Chas. W. Good,* for defendants.

LOVINS, JUDGE:

The Circuit Court of Kanawha County on its own motion certifies to this Court the questions arising upon its action in overruling a demurrer to the second amended bill of complaint filed herein by Ruby Robinson et al., claiming a share of the gas royalties from a certain tract of land in Poca District, Kanawha County, and also a share of the money to be paid under an agreement between lessors and lessee in an oil and gas lease covering such land. The following facts appear from the allegations of the second amended bill:

O. V. Milam owned the entire surface and one-half of the minerals in a 214-acre tract in Poca District. M. C. Milam owned the other one-half thereof. In 1936 the Milams executed an oil and gas lease on the entire tract to United Fuel Gas Company, providing for the payment of royalty to the lessors in case of development. Later in the year 1936, O. V. Milam and wife conveyed 70 acres of the surface of the 214-acre tract to plaintiffs, reserving three-fourths of the minerals in the portion conveyed and

the right to lease the other one-fourth, the royalties from such undivided one-fourth to go to the plaintiffs "under such leasing when and as collected". In October, 1938, the gas company completed a well on the 214-acre tract in the Oriskany sand, eighty-six feet from plaintiffs' boundary, and has paid royalties therefrom to the Milams. In December, 1940, United Fuel Gas Company completed a well in the Oriskany sand on the tract of land adjoining the 214-acre tract, known as the Dawson tract, and thereafter the Milams made demand upon the gas company for further development of their tract of 214 acres. On April 21, 1941, in lieu of such further development, the gas company entered into an agreement with the Milams, providing for the payment of royalties from gas produced on the Dawson tract. The second amended bill alleges that under the terms of the deed to the plaintiffs, O. V. Milam obtained control over the minerals in the 70 acres, thereby conveyed, and that plaintiffs are entitled to 70/856 of the royalties to be received from the entire 214-acre boundary; that the two wells involved drained from, and will eventually deplete the gas under the 214-acre tract; that the agreement between the gas company and the Milams constitutes complete development of the 214-acre tract, including plaintiffs' 70 acres thereof; that plaintiffs' demand upon the Milams for their share of the royalties from the two wells has been refused; and that the gas company has refused plaintiffs' request for a statement of the amounts paid under such royalties. The bill asks for disclosure of the production and the royalties from the two wells, and a decree requiring O. V. Milam to pay to the plaintiffs 70/856 of the royalty from each well.

The demurrer asserts that under the terms of their deed, plaintiffs received only one-fourth of the minerals in place in the 70 acres, and no interest in the residue of the 214-acre boundary; that the right reserved by O. V. Milam in such deed was the future leasing of one-fourth of the minerals in the 70-acre tract, which right was not affected by the development of the Dawson tract, which development involved only O. V. Milam's interest in the 214-acre tract; and that the bill pleads conclusions of law

as to plaintiffs' rights acquired by their deed for the 70 acres, and an undivided mineral interest. The pertinent portions of the deed conveying the surface and mineral interest to plaintiffs are as follows: "That for and in consideration of the sum of Ten ($10.00) Dollars * * * the said parties of the first part do grant * * * all that certain tract or parcel of land * * * more particularly described as follows:" (here follows description by metes and bounds). "There is hereby expressly excepted and reserved from the operation of this conveyance Three-fourths (3/4) of all the coal, oil, gas and all other minerals upon, in, and underlying said tract of land, together with all surface and surface rights, rights-of-way, etc., necessary or convenient for the prospecting for, drilling for, mining, storing, transporting and marketing said minerals; and the said O. V. Milam hereby reserves the right to lease the one-fourth (1/4) interest in said minerals hereby conveyed, to such person, or persons, firm of corporation, and at such time, or times, and for such rental and royalties, and at such prices and terms, as he may deem best, he being the sole judge thereof, and to pay to the said parties of the second part the rents and royalties accruing from said undivided one-fourth (1/4) interest under such leasing when and as collected."

The second amended bill of complaint and the demurrer thereto raised the question of apportionment of the royalties derived from the well already drilled under the lease and the money paid to defendants by reason of the agreement in lieu of further development. Principles with respect to apportionment of royalties derived from the well now drilled on the 214-acre tract are well settled in this jurisdiction. We believe the rule announced and applied in the cases of *Gas Co.* v. *Ankrom,* 83 W. Va. 81, 97 S. E. 593, 5 A. L. R. 1157; *Musgrave* v. *Musgrave,* 86 W. Va. 119, 103 S. E. 302; *Fisher* v. *Teter,* 89 W. Va. 693, 109 S. E. 896, and approved in the case of *Walker* v. *Gas Corp.,* 121 W. Va. 251, 3 S. E. 2d 55, control, and that plaintiffs are not entitled to a portion of the royalties accruing from the well drilled on the Milam land.

Plaintiffs attempt to distinguish the instant case from
the case of *Gas Co.* v. *Ankrom, supra,* and subsequent con-
sonant cases, on the theory that they took by the convey-
ance from Milam and wife only an undivided interest in
royalty, there being no severance of the undivided one-
fourth interest in the minerals acquired by them from the
minerals in and on the residue of the 214-acre tract, and
for this reason all the gas and other minerals underlying
the entire tract of 214 acres are held in joint ownership..
We think this position would be sustainable, if there were
a subdivision of the tract of land and subsequent thereto'
a single joint lease made by all the coparceners covering
the entire subdivided land. *Lynch* v. *Davis,* 79 W. Va.
437, 92 S. E. 427, L. R. A. 1917F, 566. But such is not the
case here. A lease covering the entire 214-acre tract was
in existence when the plaintiff took by conveyance the 70
acres and a one-fourth undivided estate in the minerals
underlying the same was conveyed to the plaintiffs. The
conveyance so made to the plaintiffs does not convey any
interest in the minerals underlying that portion of the
214-acre tract lying outside the boundary lines of the 70-
acre tract. Although oil and gas are fugacious, it is held
in this jurisdiction that oil and gas in place are a part of the
land. *Preston* v. *White,* 57 W. Va. 278, 50 S. E. 236; *Light &
Heat Co.* v. *Knapp,* 102 W. Va. 308, 135 S. E. 1. It is fur-
ther contended that by reason of the reservation in the
deed of conveyance from Milam and wife to plaintiffs,
whereby the right to lease the one-fourth interest of
plaintiffs is reserved, the interest in such minerals is re-
duced to a mere grant of the royalty. This contention is
not in accord with the holdings of this Court. In the case
of *Paxton* v. *Oil Co.,* 80 W. Va. 187, 94 S. E. 472, it is said
that "A grant of the royalties, rents and income arising
from the production of oil from land is a grant of the oil
in such land". This holding is approved in *Snodgrass* v.
*Koen,* 82 W. Va. 337, 341, 96 S. E. 606, wherein it is stated:
"It (referring to a deed) operated as a sale and grant of
the oil royalty and gas rental with like effect as if the
grant were of the oil and gas itself". See *Toothman* v.
*Courtney,* 62 W. Va. 167, 58 S. E. 915; *Hale* v. *Grow,* 88

W. Va. 173, 106 S. E. 409; and *Lockhart* v. *Gas Co.*, 105 W. Va. 69, 141 S. E. 521. Conceding that the reservation of the right to lease made by the Milams in their deed to the plaintiffs operated only as a grant of the royalty interest, nevertheless by operation of law a one-fourth undivided estate in the oil and gas in place passed to the plaintiffs.

It is apparent from the following quoted portion of the written agreement executed on April 21, 1941, by and between the lessors and lessee that the same was intended to satisfy the implied condition of reasonable development of the leased property in its entirety, without the actual drilling of another well for that purpose: "For all intents and purposes it shall be held that a second well has been drilled upon the said 214-acre tract of land. It is agreed and understood that in the event the said party of the second part elects to and does drill an additional well on the said 214-acre tract of land, then this agreement shall, in all respects, cease and determine". As owners of the subdivision, plaintiffs would have no right to enforce the implied condition if the leasehold as an entirety was reasonably developed by lessee, and, under the decisions of this Court hereinabove mentioned, if such development was effected by the drilling of another well on that portion of the surface of the 214-acre tract owned by O. V. Milam, plaintiffs would not be entitled to share the royalties therefrom. However, where a lessor and lessee agree, in lieu of development of a leasehold upon which a test well has been drilled, that the lessee will pay a certain sum, however measured, the owner of a portion of the minerals in a subdivision of the leasehold is entitled to a share of such payments, based upon his proportionate mineral ownership. Such an apportionment is somewhat analogous to delay rentals among owners of subdivisions of a tract of land under lease, prior to actual drilling and location of a well. The agreement herein between the gas company and the Milams provides that it shall be nullified by the drilling of another well on the leasehold, in which event it necessarily follows that payment of royalties therefrom will depend upon the location thereof.

We do not intend by what has been said herein to relax the rule as to apportionment of royalties which was last approved by this Court in *Walker* v. *Gas Corp.*, *supra*, but we believe that money to be paid by a lessee in lieu of further development is to be distinguished from royalties, the money so paid being a consideration for forbearance to enforce a covenant for reasonable development; while royalty is paid for a license to explore for minerals and when found to sever the same from the land. The distinction we make is implicit in the following: "A royalty is an agreed return paid for the oil, gas, and minerals, or either of them, reduced to possession and taken from the leased premises". *Dickson* v. *Mapes*, 181 Okla. 376, 73 P. 2d 1131. The defendants having contracted with reference to property and an undivided interest of a portion of such property being owned by the plaintiffs, and the defendants deriving profits by reason thereof from such agreement, we believe and so hold that the plaintiffs are entitled to a proportionate share of the money arising from the agreement in lieu of further development.

For the reasons herein stated, we affirm the ruling of the Circuit Court of Kanawha County in so far as it relates to that part of the second amended bill of complaint seeking apportionment of the moneys paid in lieu of further development, and in so far as the ruling pertains to the apportionment of royalties arising from the well drilled on the 214-acre tract the ruling is reversed.

*Affirmed in part; reversed in part.*