# CHARLESTON.

Marcellus A. Kendall, et al. v. A. Jackson Hays, et al.

Submitted May 22, 1923.    Decided March 4, 1923.

1. Husband and Wife—*Deed Held to Convey All Interest of Grantors.*

   Where a wife joins her husband in a deed with covenants of good title and general warranty, conveying to the grantees by metes and bounds part of a larger tract owned by them jointly, in the proportion of one-sixth undivided interest in the wife and five-sixths thereof in the husband, "subject" only "to the right of one-sixteenth of the oil saved from the premises," and prior thereto the husband had conveyed to another such right in the oil in a larger tract of which the part described in the joint deed was a part, the effect of their subsequent joint deed will be to grant all their interest in the land described in the deed. (p. 680).

2. Same—*Deeds Held to Divest Wife of Rights, So That Subsequent Deed Passed No Title.*

   Where, after such conveyance, the wife after the death of her husband undertakes to convey by indefinite description the one-sixteenth interest in the oil under a small tract within the boundry of the tract covered by the prior deed of herself and husband, on the theory of a prior parol partition of the larger tract, never effected by actual survey or definite location, the deed will invest no title to the oil in her grantee as against the grantees in the prior joint deed of herself and husband. (p. 680).

3. Partition—*How Parol Partition Between Joint Owners Effectuated Stated.*

   To effectuate a parol partition of land between joint owners, the acts of the parties must be followed by actual possession of the parcels in severalty, and in such a manner and to such an extent as to effect an ouster of the parties by one another and for such a time as is sufficient to vest title by adverse possession. (p. 683).

Appeal from Circuit Court, Marion County.

Action by Marcellus A. Kendall and others against A. Jackson Hays and others. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*C. A. Snodgrass* and *Harry Shaw,* for appellants.
*H. H. Rose* and *Ernest R. Bell,* for appellees.

MILLER, JUDGE:

Plaintiffs, by their original and amended bills, claiming title thereto are seeking an accounting by defendants for one-sixteenth of the petroleum oil produced from two wells designated as Numbers 1 and 3, alleged to be located upon a tract of 15 acres, which it is conceded is a part of a tract of 59 3-4, or according to another description 61 acres, and itself a part of a larger tract of 86 1-2 acres, in Marion county, which was devised by Samuel Kendall to his six daughters in equal moieties, one of these being the defendant Barsheba Floyd, wife of Joshua A. Floyd, the latter of whom is now also deceased, but who in his lifetime acquired by deed from them the five undivided interests of his five sisters-in-law in said tract; so that he and his wife Barsheba thereby became joint owners in said tract in the proportion of one-sixth in Barsheba and five-sixths in himself.

Plaintiffs refer their claim of right and title to the one-sixteenth of the oil produced and to be produced from said wells Nos. 1 and 3, and from other wells that may be located upon the 15 acres aforesaid to a deed of the said Barsheba Floyd to them dated February 3, 1899, which for the recited consideration of one dollar and other good and valuable considerations acknowledged, purports to grant and convey unto them, ''The undivided one-sixteenth of all the oil that underlies the surface of or that may be developed from a tract of fifteen acres of land lying on Dent's Run in Mannington District of Marion County, being the same land willed to said Barsheba Floyd by her father Samuel Kendall and which said fifteen acres has never been surveyed so as to bound it by metes and bounds but has always been considered the fifteen acres lying on the *southwest corner* of said Samuel Kendall Farm and as such described by said Barsheba Floyd and her husband J. A. Floyd in his life time when leasing their land separately as follows: On the North by lands of Alfred Kendall and J. L. Hays, on the East by lands of J. A. Floyd and Alfred Kendall, on the South by lands of J. A. Floyd and

Wm. Hays heirs, on the West by William Hays heirs, said J. A. Floyd land being now owned by Malinda Ann Batson.'' By way of an additional consideration therefor it is covenanted in said deed that ''if any well drilled on said land produces as much as one hundred barrels of·oil per day for thirty consecutive days then first parties to pay one hundred and fifty dollars more as soon as said oil is so produced.'' Plaintiffs claiming under this deed are brothers of the grantor.

The main defendants, who are A. Jackson Hays and John L. Hays, by their joint answer, denying any partition of the said land as alleged in the bill, maintain their right and title to the oil produced and to be produced from said tract under the following deeds and title papers.

*First,* the deed of J. A. Floyd, dated August 5, 1891, to J. B. Knotts, whereby for the consideration therein named the grantor granted and conveyed unto the said grantee,·with covenants of general warranty except as to the lien theretofore retained, ''the undivided one-sixteenth part of all the petroleum or other oil that now is or may be in and under a certain tract of land containing 104 acres now owned by the said Floyd, and upon which he now resides, situated on Dent's Run in Mannington District of said county adjoining the lands of William Hays, John L. Hays, Alfred Kendall, Jesse Rex and Zachariah Kendall.''

This deed contains a condition or covenant that in the event the first well drilled on said tract shall, within the first ten successive days after it has been fairly drilled in, produces as much as 50 barrels of oil per day, the grantor should be paid the further consideration of $400, and that if within the same time such well should produce 100 barrels of oil or more, he should be paid the further consideration of $400.00, making in all $800.00; and a lien was retained on the oil conveyed to secure the payment of the additional consideration therein provided for. It is to be observed that Mrs. Floyd did not join in this deed.

*Second,* the deed from the said J. B. Knotts and wife, grantee in said first deed, to the said John L. and A. Jackson Hays, dated September 24, 1891, whereby, for the consideration therein named the grantors did thereby grant and convey

unto the parties of the second part "the oil privileges in a deed made to said J. B. Knotts by J. A. Floyd, dated the 5th day of August, 1891, and which deed is not yet recorded, being the one-sixteenth of all the oil in and under a tract of 104 acres of land lying on Dents Run in Mannington District of Marion County, being the same on which the said J. A. Floyd now resides, the same described in said deed." And it is provided therein that the said oil is to be delivered in the same way, and same conditional payments are to be made as provided in said deed from J. A. Floyd.

On April 1, 1895, nearly four years before the date of the deed from Barsheba Floyd to plaintiffs, she joined her husband, J. A. Floyd, in a deed to Zebedee Batson, whereby, for the consideration therein recited, they granted and conveyed unto the said Batson all of the following described property *subject* to the right of one-sixteenth of all the oil saved from the premises on the land therein described, to-wit: "A certain tract or parcel of land lying on the waters of Dents Run a branch of Buffalo Creek in Mannington District of Marion County, West Virginia, adjoining land of Z. Kendall, J. L. Hays and others and bounded and described as follows. Beginning at a stone in the county road in a line of Z. Kendalls with the road N. 43 W. 25 Ps stone in road N. 36 W. 44 Ps stone in the forks of the road with the Batson road N. 4 W. 36 Ps stone in the road with the road N. 4 E. 19 3-4 Ps stone in Alfred Kendall line with his line S 73 1-2 W. 35 Ps stone S. 19 E. 6 Ps West 38 Ps 3 white oaks S 43 S. 30 Ps White oak S 51 E. 42 Ps stone S. 14 W. 58 Ps chestnut oak S. 85 E. 88 Ps. pointers N. 59 E. 38 1-2 Ps to the beginning containing 59 3-4 acres more or less," with covenants of good title and general warranty except as against the purchase money, a lien for which was retained in the deed.

It is conceded that the 59 3-4 acres so conveyed, by subsequent survey found to contain about 61 acres, is inclusive of the 15 acres the one-sixteenth of the oil produced from which is claimed by plaintiffs under the deeds from Barsheba Floyd, of February 3, 1899.

The theory of plaintiffs with respect to these deeds, by ref-

erence to prior and subsequent deeds, leases and transactions respecting these lands and oil, is that prior to the deed to Batson, of April 1, 1895, there had been a parol partition of the 86 1-2 acres between Floyd and his wife Barsheba, whereby these 15 acres had been set off to her by reference to adjoining owners as described in her deed to plaintiffs, of February 3, 1899, and that as she did not join her husband in his deed to Knotts, of August 5, 1891, conveying to him the undivided one-sixteenth part of all the petroleum and other oil in and under the entire 104 acres therein described, and as their joint deed to Batson, of April 1, 1895, for the 59 3-4 acres, was by its terms made *"subject to the right of one-sixteenth of all the oil saved from the premises,"* this provision was intended to protect her right to the oil under the 15 acres, and that she did not thereby part with her interest in the royalty oil produced therefrom, and certainly not as to her supposed dower interest in the one-sixteenth interest not conveyed to Batson.

The record shows that after Batson so acquired said tract of 59 3-4 or 61 acres, by agreement or deed of January 3, 1916, his wife joining therein, he leased the same for oil and gas purposes to the defendant Fred W. Bartlett, for the term of ten years or as long thereafter as oil or gas, or either of them, should be produced therefrom by the lessee, his heirs or assigns, with the covenant therein contained on the part of the lessee to deliver to the lessors, their heirs or assigns, the equal one-eighth part of all the oil produced and saved from the premises, and which contained also other covenants and agreements not pertinent to the present controversy.

It is under this lease that the oil, the subject of this suit, is now being produced. The decree appealed from denied the plaintiffs any relief, and on the pleadings and proofs in the cause, dismissed the bill.

The pivotal question presented for decision is whether Mrs. Barsheba Floyd, after joining with her husband in the deed of April 1, 1895, to Zebedee E. Batson, had left in her any estate or interest in the particular portion of the land thereby conveyed, which, as already pointed out, includes the 15 acres and wells Nos. 1 and 3 said to be located thereon, which she

could subsequently convey to her brothers, the plaintiffs in the case. Before the deed to Batson was made, she undoubtedly had an undivided one-sixth interest in the 86 1-2 acres devised to her and her sisters by her father's will, but she had then no vested interest in the 17 1-2 acres known as the Straight land, adjoining the 86 1-2 acres subsequently acquired by her husband, and which went to make up the entire tract of 104 acres, the undivided one-sixteenth part of the petroleum under which was conveyed by J. A. Floyd by his sole deed to J. B. Knotts, on August 5, 1891. But in the present case we are only concerned with the rights, if any, of the plaintiffs under the deed for the oil under the 15 acres. We are therefore confronted with the duty of interpreting the provisions of the deed of Floyd and wife to Batson, not in terms a reservation, but quoting the exact language thereof, *"subject to the right of one-sixteenth of all the oil saved from the premises."* Nothing is provided in the deed as to the disposition thereof in case any oil should be produced from the land. What did the grantors intend by this provision? As we have already observed, the deed contained covenants of general warranty: it was an absolute conveyance of every interest in the land, *subject* "only to the right of one-sixteenth of all the oil saved from the premises." Manifestly J. A. Floyd could assert no title to this oil, for he had previously conveyed a one-sixteenth interest in all the oil under the whole of the 104 acres to J. B. Knotts, and after the deed to Batson nothing whatever remained in him. As to him the one-sixteenth interest in the oil referred to in the Batson deed must necessarily have been intended as the oil previously granted by him to Knotts; and so far as he is concerned, Knotts or his grantee is entitled thereto. Can we assume that Floyd and his wife had two different objects in these provisions of their joint deed? Clearly it could not have been intended to protect her undivided interest in the whole of the 59 3-4 acres or in 15 acres thereof. On the theory of an undivided interest, her proportion of the royalty would have been, not the half of the one-eighth, but one-sixth of the one-eighth royalty, or one-forty-eighth; and on the theory of a valid partition of the 86 1-2 acres, setting off to her 15 acres,

as cleaimed, her royalty would be one-eighth, not one-sixteenth, of the oil; wherefore the provision in the deed, "subject to" etc, would be quite inadequate to express any such intention of the grantors. On the theory of a valid parol partition and a joint lease or sale of the land or oil in the premises, the royalty oil reserved would properly go to the lessors in the proportions in which they respectively owned the leased premises. *Lynch* v. *Davis,* 79 W. Va. 437. When oil was discovered and produced by Batson or his lessee, to whom were they bound to deliver the one-sixteenth of the oil subject to which Batson took title? Was it not to whomsoever owned the one-sixteenth interest so provided for? We think there can be no doubt on this question. When Mrs. Floyd joined her husband in the deed to Batson we think she must have known of the outstanding interest granted by her husband to Knotts, and thereby ratified and confirmed his right and title thereto, and thereby estopped herself from setting up any title to that oil. In *Headly* v. *Colonial Oil Co.,* 67 W. Va. 628, we decided that when a wife joins her husband in a deed conveying undiscovered oil and gas in place, she thereby released her claim to dower in such portion, and that where after the execution of such a deed and the death of her husband she unites with the heir in a lease of the whole of the oil and gas, she will be estopped to claim dower against the lessee or his assignees in more than one-half of the royalty oil reserved in the lease. Upon parity of reasoning, we think that in this case, Mrs. Floyd having joined her husband in an absolute deed to Batson for the 59 3-4 acres, *subject* only to the one-sixteenth of the oil therein which he had previously granted to Knotts, she is now estopped to claim that she has any right to the oil or any of the royalty oil produced under Batson's lease to Bartlett, regardless of any question as to the alleged partition of said tract. Besides, the grant of a thing "subject to" some particular interest therein implies an outstanding right or interest in the thing, subject to which the grant is made; and is a grant of every other estate or interest in the property except such rights and interests as pertain to the grantors except in the subject of the exception. Hammond's Estate, 197 Pa. St. 119; *Bridell* v. *Fairgrounds*

*Real Estate Co.*, 95 Mo. App. 676 ;*Schupp* v. *Hukell*, 34 W.
Va. 375; *Morton* v. *Rock Bottom Coal Co.*, 91 W. Va. 169.

But was there a valid parol partition of the 86 1-2 acres of
which the 57 3-4 acres conveyed to Batson was a part? We
observe that the deed of February 3, 1899, under which plain-
tiffs lay claim to the oil, declares on its face that the fifteen
acres purported to have been conveyed to them had never
been surveyed so as to bound it by metes and bounds. And,
says the next following provision of the deed, ''has always
been considered the fifteen acres lying on the *southwest* cor-
ner of said Samuel Kendall Farm and as such described by
said Barsheba Floyd and her husband J. A. Floyd in his
lifetime when leasing their land separately,'' as recited in
said deed, and already quoted. The only instances of such prior
leasing showing in the record consists of : First, a lease of Sep-
tember 20, 1889, by said J. A. Floyd to the West Virginia Oil
& Gas Co., of the entire 104 acres, which, as already pointed
out, covered the said 59 3-4 acres and the alleged 15 acres
included therein, in which no reference is made to any 15-
acre tract, or to any right or interest of the said Barsheba
therein, except that she is named as one of the parties of the
first part, but did not sign the lease; Second, a lease of Sep-
tember 12, 1894, by Floyd and his wife Barsheba to the South
Penn Oil Company, for the same tract of 104 acres, but in
which no reference is made to any 15 acres as belonging to
Barsheba; Third, a lease executed by the same parties, on the
same day, to the same company, of a tract described by ad-
joining owners as in the deed by Barsheba to plaintiffs, and
as containing 15 acres, more or less. No operations under
either of these leases were ever begun or continued on the
leased property. Why the two leases were taken by the same
lessor is not very apparent. In her answer to the bills in the
cause, if we may look to it for the fact, her testimony not
having been taken in the cause, Mrs. Floyd says there was
never in fact any partition of the land between her and her
husband, and that their object was that they thought by the
two they might thereby secure prompter development of the
property. Whatever may be the facts concerning these boun-
daries, they can have little bearing on the question now pre-

sented for decision. Nor can the recitals in her deed to plaintiffs, nor the fact that defendants after the drilling in of the wells had a surveyor make a plat or plats purporting to lay down on the ground 15 acres, first in one place, then in another, estop them to deny the rights claimed by plaintiffs under the deed from said Barsheba Floyd, if in fact, as we hold, she had parted with all interest in said 59 3-4 acres by joining with her husband in the deed to Batson, under which he and his lessees claim title and right to the land and oil, except the one-sixteenth thereof previously conveyed to Knotts. The deed to plaintiffs, as we have seen, purports to grant one-sixteenth of the oil under the 15 acres, not any dower interest in the oil. The dower interest of Mrs. Floyd was subsequently conveyed to the defendants.

· That there was no actual parol partition of the land effective in law and binding on any of the parties to the controversy, is well established. If we could say from the record that there was ever any attempt to effect a partition, it was abortive, for there is nothing in the record prior to the making of the surveys and plats by defendants referred to, showing that any lines were run or boundaries established defining the 15 acres. The two leases to the South Penn Oil Company, of September 12, 1894, are evidence of no such severance of right or unity of possession. The call in the lease for the 15 acres for the lands of Alf. Kendall and John L. Hays, on the north, would probably sufficiently identify the northern boundary, but the remaining calls for the lands of Alf. Kendall and J. H. Floyd on the east, and on the south for J. H. Floyd and William Hays' heirs, and on the west for the land of William Hays' heirs, would not render the description definite enough to identify any exact location, for 15 acres might be laid off out of the larger tract in a variety of ways which would answer such description, as the record shows; but without an actual survey and running of the lines or fixing the exact location thereof, and the taking of possession of the allotments by the several partitioners, such attempted partition would be ineffectual. As already observed, in the deed to plaintiffs the 15 acres is described as lying in the southwest corner of the tract, northwest corner probably hav-

ing been intended, and as shown that deed declares that there had not at that time ever been any survey of the 15 acres. So that, those instruments constitute no evidence of any actual partition of the land. To effectuate a valid parol partition of land, according to our decisions, the acts of the partitioners must be followed by actual possession of the parcels in severalty and in such a manner and to such an extent as to effect ousters of the parties by one another, and for such a time as is sufficient to vest title by adverse possession. *Hutchens* v. *Denton, et al.* 83 W. Va. 580, and cases cited. That nothing of this kind ever took place between these parties is abundantly shown by the record of this case. It is useless to go further in a discussion of the facts or principles controlling us in such cases.

The decree below will therefore be

*Affirmed.*